## NATIONWIDE LIFE INSURANCE COMPANY

v.

## Anthony ANNARINO, in his capacity as Tax Collector for the City of Providence, et al.

### No. 97–377–Appeal.

Supreme Court of Rhode Island.

March 30, 1999.

---

4. The statute at issue in *State v. Smyth,* 121 R.I. 188, 397 A.2d 497 (1979) was G.L.1956 § 31–26–

1.

Paul J. Bogosian, Jr., Providence, for plaintiff.

Richard G. Riendeau, Providence, for defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal concerns the effect of a debtor's default in its repayment obligations under a bankruptcy reorganization plan upon the priority of a municipal lien for unpaid property taxes. The defendants, Anthony Annarino, in his capacity as tax collector for the city of Providence (tax collector), and the city of Providence (collectively, the city), appeal from a Superior Court judgment in favor of the plaintiff, property-owner Nationwide Life Insurance Company (Nationwide). We ordered the parties to show cause why we should not decide this appeal summarily. None having been shown, we proceed to re-solve this appeal without further briefing or argument.

Nationwide is the owner of real estate designated as lot no. 33 on plat no. 16, located at 321 South Main Street in Providence. Nationwide held a mortgage on the property granted by the prior owner. In 1992, the prior owner filed a Chapter 11 bankruptcy petition. This filing stayed the city's scheduled tax sale of the property. On April 19, 1993, the United States Bankruptcy Court for the District of Rhode Island entered an order confirming the prior owner's second amended plan of reorganization. The plan provided that "[t]he secured claim of the city for tax arrearages for the period of July 1, 1991 through June 30, 1992" would be paid in equal quarterly installments commencing on July 1, 1993 and ending June 30, 1994. The plan also provided that the Bankruptcy Court "shall retain jurisdiction *** [t]o adjudicate all controversies regarding the validity, extent and enforceability of any lien; *** [and][t]o adjudicate all claims with respect to a security or ownership interest in any property of the [prior owner]."

On March 15, 1995, Nationwide gave written notice to the real estate's prior owner that it was in default of its mortgage obligations to Nationwide under the plan and that Nationwide intended to foreclose under the mortgage. Nationwide subsequently did foreclose on the property and acquired title to it via a mortgage deed that it issued to itself and then recorded on April 28, 1995. Thereafter, Nationwide requested that the tax collector provide it with a municipal lien certificate pursuant to G.L.1956 § 44–7–11. The tax collector issued a certificate showing a city lien against the real estate for the prior owner's unpaid 1991 taxes in the amount of $35,964.71, plus interest of $23,071.41. Thereafter, Nationwide demanded that the tax collector issue a new certificate without reference to the city's claim of a lien for the 1991 taxes; however, the tax collector refused to comply.

In November 1996, Nationwide filed a Superior Court complaint seeking the issuance of a writ of mandamus against the tax collector. The complaint requested that, pursuant

to § 44–7–11,[1] the court require the tax collector to issue a certificate of municipal liens to Nationwide, that would omit any reference to the city's claim of a lien for unpaid 1991 taxes. Nationwide also sought a declaratory judgment against the city which would declare that it could not claim a lien for unpaid 1991 property taxes against the real estate owned by Nationwide. The city filed an answer and counterclaim seeking a declaration that its 1991 tax lien was valid.

The Superior Court heard this case upon a joint statement of agreed facts and written memoranda. Following oral arguments by counsel for the parties, the trial justice rendered a written decision pursuant to which he issued a writ of mandamus that commanded the tax collector to provide a certificate to Nationwide ·containing no reference to the city's claim of a lien for 1991 taxes. He also ordered a judgment to enter declaring that the city's lien for the 1991 taxes had terminated on April 28, 1995. The city has filed an appeal from this judgment.

■ On appeal, the city contends that the trial justice erred in issuing the requested writ of mandamus and in granting the requested declaratory relief. Although the city raises numerous issues relative to the trial justice's findings, we need reach only the first of its arguments to resolve this appeal. The city maintains that Nationwide's entitlement to the requested relief depends upon the plan's effect on the priority of the parties' secured interests in the prior owner's property after the prior owner defaulted in its obligations under the plan. It also contends that, because the Bankruptcy Court retained jurisdiction to resolve any disputes arising under the reorganization plan, the Superior Court should not have entertained this lawsuit until the Bankruptcy Court adjudicated (or abstained from deciding) the effect of the prior owner's default under the plan on the city's tax lien. We agree.

We are of the opinion that this is fundamentally a dispute concerning the parties' respective rights as secured creditors to the prior owner's assets pursuant to the terms of the bankruptcy reorganization plan established for this debtor. In particular, the claims at issue concern whether the prior owner's default in meeting its obligations to

1. General Laws 1956 § 44–7–11 provided, at the time, in pertinent part, as follows:

"(a) The collector of taxes for any city, or for any town shall, on written application by any person, and within five (5) days thereafter, excluding Saturdays, Sundays, and holidays, furnish to the applicant a single certificate of all taxes and other assessments, including water rates and charges, which at the time constitute liens on the parcel of real estate specified in such application and are payable on account of the real estate. The certificate shall be itemized and shall show the amounts then payable on account of all taxes and assessments, rates, fees and charges, so far as the amounts are fixed and ascertained, and if the amounts are not then ascertainable, it shall so be expressed in the certificate. In addition, the tax certificate shall include (1) a statement as to whether there are any tax sales scheduled which would affect the parcel of real estate noted in said certificate and (2) a statement as to whether any of taxes or other assessments noted on the tax certificate as being paid in full were paid as the result of a sale held pursuant to the provisions of chapter 9 of this title within the twelve (12) month period immediately preceding issuance of the certificate. Any city or town officer or board doing any act toward establishing any tax assessment, lien, fees or charge upon any real estate in the city or town shall transmit a notice of that act to the collector of taxes. The collector of taxes shall charge six dollars ($6.00), except that for tax certificates issued by the tax collector(s) for the city of Woonsocket and the town of North Smithfield and the town of Coventry and the town of Lincoln, the charge shall be twelve dollars ($12.00) for each certificate so issued, and the money so received shall be paid into the city or town treasury. A certificate issued on or after October 1, 1966, under this section may be filed or recorded with the land evidence records of the city or town in which the real estate shall be situate [sic] within sixty (60) days after its date, and if so filed or recorded shall operate to discharge the parcel of real estate specified from the liens for all taxes, assessments or portions thereof, rates, fees and charges which do not appear by the certificate to constitute liens thereon, except the taxes, assessments or portions thereof, rates, fees and charges which have accrued within one year immediately preceding the date of the certificate, provided that they are noted in the certificate, and the taxes, assessments or portions thereof, rates, and charges concerning which a statement has been filed or recorded in the land evidence records; provided, a certificate issued under this section shall not affect the obligation of any person liable for the payment of any tax, assessment, rate, fee, or charge."

Nationwide under the bankruptcy plan had any effect upon the priority of the city's tax lien and its secured interest in the property. These issues center on deciding what impact, if any, that the Bankruptcy Court's amended plan of reorganization for the prior owner had on the priority of the city's lien for its 1991 taxes on the subject property. The plan provided, inter alia, that "[t]he Bankruptcy Court shall retain jurisdiction of this case *** [t]o adjudicate all controversies regarding the validity, extent and enforceability of any lien; *** [and][t]o adjudicate all claims with respect to a security or ownership interest in any property of the Debtor or any proceeds thereof." In their capacity as secured creditors of the prior owner, both the city and Nationwide were subject to the bankruptcy plan and thus, to applicable federal bankruptcy law.

■ Despite the Bankruptcy Court's specific retention of jurisdiction over this particular type of controversy, the Superior Court concluded that the Bankruptcy Court's jurisdiction had long since come to an end because the bankruptcy case allegedly closed on August 5, 1993. But the mere administrative closing of a case file does not ipso facto deprive a bankruptcy court of jurisdiction over a dispute for which it has expressly retained jurisdiction and which is otherwise related to a bankruptcy case or to the fulfillment of a reorganization plan. *See* 28 U.S.C. § 1334(b); *see also* 11 U.S.C. § 1142(b) ("The [bankruptcy] court may direct the debtor and any other necessary party *** to perform any *** act, including the satisfaction of any lien, that is necessary for the consummation of the plan.").

Given these circumstances, we are of the opinion that the Superior Court, as a matter of comity and judicial economy, should have abstained from exercising jurisdiction in this action unless and until the Bankruptcy Court either had (1) abstained, refused to reopen the case, or otherwise declined to pass on the merits of the parties' dispute, or (2) adjudicated the effect of the prior owner's default under the plan on the city's tax lien. For these reasons, we sustain the city's appeal, vacate the declaratory judgment, quash the writ of mandamus issued by the Superior Court, and remand the papers in this case to the Superior Court for the entry of a judgment dismissing the parties' claims in this case without prejudice. Thereafter, any of the parties may petition the Bankruptcy Court "[t]o adjudicate all controversies regarding the validity, extent and enforceability of any lien *** [and] all claims with respect to a security or ownership interest in any property of the Debtor or any proceeds thereof."