DECISION
This matter is before the Court following a circuitous journey from the Superior Court (Nationwide Life Ins. Co. v. Annarino, C.A. No. PC 96-609 1) to the Supreme Court (727 A.2d 200 (R.I. 1999)) to the United States Bankruptcy Court for the District of Rhode Island (In re: 321 South Main Street L.P. BK No. 92-11576) and back to this Court. The following facts are gleaned from the referenced opinion of our Supreme Court. The matter is before the Court on plaintiffs request for declaratory relief and for a writ of mandamus.
 Facts and Travel
Nationwide is the owner of real estate designated as Lot no. 33 on Plat no. 16 at 321 South Main Street in Providence, Rhode Island (hereinafter "Real Estate"). Nationwide held a mortgage on the Real Estate granted by the prior owner (hereinafter "Debtor"). On or about May 26, 1992, the Debtor filed a Chapter 11 bankruptcy petition. This filing implicated the automatic stay provisions of § 362 (a) of the Bankruptcy Code, 11 U.S.C. § 362
(a) (hereinafter "the Code") and prevented the August 6, 1992 scheduled tax sale of the Real Estate by the Defendants, Anthony Annarino in his capacity as Tax Collector and the City of Providence (hereinafter "Tax Collector" and "the City" respectively), due to nonpayment of property taxes by the Debtor. On April 19, 1993, the United States Bankruptcy Court for the District of Rhode Island entered an order confirming the Debtor's second amended plan of reorganization (hereinafter "the Plan"). The Plan provided that "[t]he secured claims of the city for tax arrearages for the period of July 1, 1991 through June 30, 1992" would be paid in equal quarterly installments commencing July 1, 1993 and ending June 30, 1994.
On March 15, 1995, Nationwide gave written notice to the Debtor that it was in default of its mortgage obligations to Nationwide under the mortgage and that Nationwide intended to foreclose under the mortgage. Nationwide subsequently did foreclose on the Real Estate and acquired title to it via a mortgage deed that it issued to itself and recorded on April 28, 1995. Thereafter, Nationwide requested that the Tax Collector provide it with a municipal lien certificate pursuant to G.L. 1956 § 44-7-11. The Tax Collector issued a certificate showing a city lien against the Real Estate for the Debtor's unpaid 1991 property taxes [July 1, 1991 through June 30, 1992] in the amount of $35, 964.71, plus interest of $23, 071.41. Thereafter, Nationwide demanded that the Tax Collector issue a new certificate without reference to the City's claim of a lien for the 1991 taxes; however, the Tax Collector refused to issue same.
In November 1996, Nationwide filed a Superior Court complaint seeking the issuance of a writ of mandamus against the Tax Collector. The complaint requested that pursuant to G.L. 1956 § 44-7-11, the court require the Tax Collector to issue a certificate of municipal liens to Nationwide that would omit any reference to the City's claim of a lien for unpaid 1991 taxes. Nationwide also sought a declaratory judgment declaring that the City could not claim a lien for unpaid 1991 property taxes against the Real Estate owned by Nationwide. The City filed an answer and counterclaim seeking a declaration that its 1991 tax lien was valid.
The Superior Court, Justice Israel presiding, heard the case upon a joint statement of agreed facts and written memoranda. In his written decision, Justice Israel ordered a writ of mandamus to be issued compelling the Tax Collector to provide a certificate to Nationwide containing no reference to the City's claim of a lien for the 1991 taxes. He also ordered a judgment to enter declaring that the City's lien had terminated on April 28, 1995. The City filed an appeal from that judgment.
The Supreme Court, in a per curiam opinion dated.March 30, 1999, sustained the City's appeal. The Supreme Court held that the Superior Court, as a matter of comity and judicial economy, should have abstained from exercising jurisdiction in that action unless and until the Bankruptcy Court either had (1) abstained, refused to reopen the case, or otherwise declined to pass on the merits of the parties' dispute, or (2) adjudicated the effect of the Debtor's default under the Plan on the City's lien. As a result, the Supreme Court vacated the declaratory judgment, quashed the writ of mandamus issued by the Superior Court, and remanded the papers to the Superior Court for the entry of a judgment dismissing the parties' claims in that case "without prejudice." Nationwide 727 A.2d at 203. The Supreme Court stated that, thereafter, any of the parties may petition the Bankruptcy Court "[t]o adjudicate all controversies regarding the validity, extent and enforceability of any lien . . . [and] all claims with respect to a security or ownership interest in any property of the Debtor or any proceeds thereof" Id. at 203.
Subsequently, on May 26, 1999, Nationwide filed a Motion to Reopen the bankruptcy proceeding of the Debtor, in which motion Tax Collector and the City joined. A hearing was held by the United States Bankruptcy Court on July 7, 1999, Judge Votolato presiding, at which time the court ordered the case reopened administratively; however, the court abstained from adjudicating the dispute between the creditors. In re: 321 South Main Street, L.P., Debtor., BK No. 92-11576, July 21, 1999.
Nationwide, as plaintiff, brought a new proceeding. Nationwide, requesting a writ of mandamus and a declaratory judgment, and the Defendants, requesting declaratory relief, submitted briefs to that effect to this Court.
 The Arguments
Nationwide, in its brief and reply, sets forth a number of arguments. Nationwide argues that the City does not retain a statutory lien against the Real Estate for the unpaid 1991 property taxes pursuant to G.L. 1956 § 44-9-1 (b). Relying on Rathburn v. Allen 63 R.I.. 109 (1939) and Nationwide's recording of the Foreclosure Deed on April 28, 1995, Nationwide maintains that the requirements of G.L. 1956 § 44-9-1 — namely that the lien shall terminate three (3) years after the date of assessment if the estate has been alienated and the instrument of alienation has been recorded — have been satisfied. Furthermore, Nationwide avers 11 U.S.C. § 108,[1] the Code's extension of time section, provides the City no relief. Nationwide maintains that applying this extension to any of the following dates — August 5, 1993, the date the bankruptcy case was closed; March 20, 1995, the date the Tax Collector and the City received notice of Nationwide's intention to foreclose on the Real Estate; or April 28, 1995, the date Nationwide recorded its foreclosure deed — affords the City no relief, for it made no attempt to enforce the lien until October 21, 1996, a date long after the expiration of any period of extension.
Additionally, Nationwide argues that neither the City nor the Tax Collector may make a retroactive application of the payments previously made with respect to the Real Estate in contravention of the Chapter 11 Reorganization Plan, confirmed on April 19, 1993, in order to extinguish the 1991 real estate taxes and to thereby create unpaid balances due for subsequent years. The Plan obligated the City and the Tax Collector to apply real estate tax payments in a specified manner. Nationwide further notes that the municipal lien certificate issued by the Tax Collector, purportedly in accordance with G.L. 1956 § 44-7-11, on October 21, 1996 and recorded on November 6, 1996, had been recorded within sixty (60) days of issuance of the certificate and is thus statutorily barred under G.L. 1956 § 44-7-1 1 (a).[2]
Also, in its reply brief submitted at the request of this Court, Nationwide argues that under 11 U.S.C. § 1141 (c) "property dealt with by the Plan is free and clear of all liens and interests of creditors." Nationwide asserts that Bankruptcy law pre-empts state law thus the Real Estate was "dealt with" in the Plan and is free and clear of the City's lien on the property.
Alternatively, the Tax Collector and the City argue that under11 U.S.C. § 1141 the Plan is controlling as to the priority of payment. As such, they maintain that the Class II designation of the City's lien, as provided in the Plan, is superior to all claims but administrative expenses. As a result, the Tax Collector and the City argue that the City's lien was transformed into a non-dischargeable "judgment" lien or a "Plan" lien until paid. As such, the lien would be superior to Nationwide's foreclosure sale which, according to the City, would be subordinate to all interests prior to it established by the Plan.
 The Effect of the Reorganization Plan
Despite the expansive and well-thought-out arguments advanced by the parties, this Court finds the issue to be quite simple: whether the Real Estate remains encumbered, post Reorganization Plan, by the 1991 property taxes which the Debtor failed to pay. Once a Reorganization Plan is confirmed, it becomes controlling so the creditor is bound with respect to resolution of the debtor's pre-petition obligations. Matter of Pavlovich952 F.2d 114 (5th Cir. 1992). It is well-settled that "[a] confirmed plan is a contract and the parties to the plan are bound by its terms." In re Schreiber, 163 B.R. 327, 333 (Bkrtcy.N.D.Ill. 1994). The Bankruptcy Code, specifically 11 U.S.C. § 1141
(a), states: "[e]xcept as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan."
This Court finds that the resolution to this dispute is found in 11 U.S.C. § 1141, specifically subsection (c) which states "[e]xcept as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." Section 1141 (c) articulates the general rule that property dealt with by the plan is transferred or retained by the debtor, free and clear of claims or interests of creditors, equity security holders and general partners. Collier on Bankruptcy, 15th Ed. Rev., Vol. 8, § 1141.04, p. 1141-12. Not only with respect to plans that provide for the vesting of property in the debtor, but also those that provide for the transfer of the property to a third party, . . . . . the terms of the plan govern the property, and unless some provision is made for a party with an interest in the property, the property vests or is transferred free of any claim to or interest in the property." Collier at § 1141.04[1], p. 1141-13. If a debtor's plan gives the secured creditor a new claim in satisfaction of its pre- petition claim, upon confirmation of the plan, the pre-petition claim is discharged and simultaneously becomes unenforceable. From that instant, the creditor's claim is based on the plan itself, not the underlying contract, tax statute or other. In re Clarksville Hospitality Corp. Bk. No. 93-17668 (D. Mass., 1996) in 35 C.B.C.2d 877. See also In the Matter of Penrod 50 F.3d 459
(7th Cir. 1995); In re Winchell 200 B.R. 734 (Bkrtcy. D. Mass. 1996); In re American Prop., 30 B.R. 246; In re Northeast Office Commercial Properties, 178 B.R. 915 (Bkrtcy. D. Mass. 1995).
Moreover, it is a general rule that
"property transferred to a successor by the debtor is transferred free of claims and encumbrances of creditors and the interests of the debtor, whether the debtor is an individual, partnership or corporation, except to the extent that provision is made for such claims and interests in the plan or the order. Creditors are typically provided for under the terms of the plan, and their remedy is to such payment or other satisfaction under the plan rather than out of the assets that are transferred." Collier at § 1141.04[2], p. 1141-15.
Accordingly, "successor liability is precluded by Section 1141 (c) which specifically frees debtor's property from creditors' claims." In re White Motor Credit Corp., 75 B.R. 944 (Bkrtcy. N.D. Ohio 1987).
In the instant case, the Reorganization Plan, confirmed on April 19, 1993, "deals with" and provides for" the Real Estate, thus bringing it under the Plan. The Plan provides that
"[t]he secured claim of the City for tax arrearages for the period of July 1, 1991 through June 30, 1992, which claim has been allowed by stipulation entered into between Debtor and the City in the amount of $118, 864.16, shall be paid in full over a period of approximately two and one-half years from the Effective Date of the Plan . . . the aforesaid payments shall be made in full and compete satisfaction of the allowed secured claim of the City . . . Joint Statement of Material Facts Not in Dispute Exhibit C, p.1 2-13.
The Plan expressly deals with the Real Estate and the claim by the City. The City failed expressly to preserve its lien while participating in the Plan; as such, the Real Estate is free and clear of the City's claim for 1991 property taxes.
Sound policy reasons underlie these principles. The interpretation that property dealt with in the plan emerges from bankruptcy free and clear of liens lowers the cost of transacting with the reorganized entity, thus boosting the plan's chances of success, and allows a prospective creditor or investor in the reorganized entity to know whether any liens have been carried over from the bankrupt predecessor. In the Matter of Penrod,50 F.3d 459, 463 (7th Cir. 1995).
Furthermore, with respect to Nationwide's foreclosing on the property, the Plan states that "Nationwide shall be entitled to exercise any and all of its remedies under said documents and in accordance with the provisions of applicable non-bankruptcy law, including without limitation, demanding payment of rent directly from Debtor's tenants to Nationwide or to foreclose its Mortgage against Debtor's Real Estate." Joint Statement of Material Facts Not in Dispute Exhibit C, p. 17. Not only did the Plan expressly deal with the City's lien, but it also expressly preserved Nationwide's pre-confirmation rights and remedies. Because the Plan unambiguously provided for the mortgage's preservation upon confirmation, the Plan bound the parties. In re Smith and Kourian, 216 B.R. 686 (1st Cir. BAP 1997).
 Conclusion
Accordingly, this Court declares that Nationwide owns the Real Estate free and clear of the City's property tax lien for the 1991 taxes at issue. Judgment is to enter declaring that the lien established by § 44-9-1 for 1991 taxes was extinguished due to the operation of the Reorganization Plan and 11 U.S.C. § 1141
(c). A Writ of Mandamus will issue compelling the Tax Collector to issue a certificate without claim of lien for taxes assessed for 1991.
The Plaintiff will present a form of writ for issuance and judgment for entry on reasonable notice to the Defendant.
[1] § 108. Extension of time
(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1202 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of —
(1) The end of such period, including any suspension of such period occurring on or after the commencement of the cause; or
(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 120 1, or 1301 of this title, as the case may be, with respect to such claim.
[2] G.L. 1956 § 44-7-11
A certificate issued on or after October 1, 1996, under this section may be filed or recorded with the land evidence records of the city or town in which the real estate shall be situated within sixty (60) days after its date, and if so filed or recorded shall operate to discharge the parcel of real estate specified from the liens for all taxes, assessments or portions thereof rates, fees and charges which do not appear by the certificate to constitute liens thereon, except the taxes, assessments or portions thereof, rates, fees and charges which have accrued within one year immediately preceding the date of the certificate, provided that they are noted in the certificate, and the taxes, assessments or portions thereof, rates, and charges concerning which a statement has been filed or recorded in the land evidence records; provided, a certificate issued under this section shall not affect the obligation of any person for the payment of any tax, assessment, rate, fee, or charge.