UNION STATION ASSOCIATES et al.

v.

Thomas ROSSI, in his capacity as Tax Assessor for the City of Providence et al.

No. 2002–454–Appeal.

Supreme Court of Rhode Island.

Dec. 8, 2004.

James W. Ryan, Providence, for Plaintiffs.

Caroline Cornwell, Providence, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

FLAHERTY, Justice.

"[The] power to tax involves, necessarily, [the] power to destroy"—John Marshall [1]

Before us is the latest chapter in a protracted dispute between the City of Providence and several landowners and taxpayers with respect to property within parcel 1 of the Capital Center's Special Development District in the heart of downtown Providence. The mythical and legendary law firm of Hinder, Stall, and Delay could not hold a candle to the efforts of the City of Providence to retard the wheels of justice from grinding to their

---

1. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 327, 4 L.Ed. 579 (1819).

inevitable destination in this and kindred matters. At times, the actions of the city during this saga could aptly be described as municipal thuggery.

Indeed, this appeal marks the fourth time that this matter and the related case of *Capital Properties, Inc. v. City of Providence*, have come before this Court for consideration. The defendants, Thomas Rossi and Anthony Annarino (collectively defendant or city), in their capacities as Tax Assessor and Tax Collector for the City of Providence, appeal from a judgment in favor of the plaintiffs, Union Station Associates, East Office Building Associates, L.P., and Parcel One Development Associates, Inc. (collectively plaintiff or Union Station), on their petition for a writ of mandamus and attorneys' fees. The city argues that because the plaintiffs were not entitled to mandamus, the trial justice erred in granting attorneys' fees for that petition. For the reasons stated herein, we affirm the judgment of the Superior Court.

### Facts and Procedural History

Due to the complex nature and travel of this case, a detailed review of the facts and brief history of this litigation is crucial to our disposition of this appeal. In April 1997, Capital Properties, Inc. (CPI), filed an action in Superior Court seeking a determination of the fair market value of ten parcels of land that had been condemned by the State of Rhode Island under the Providence River Relocation–Memorial Boulevard Extension Project.[2] The Superior Court entered final judgment, awarding CPI condemnation damages of $10,653,328.03, or $110 per square foot. Following that judgment, the state filed a complaint seeking a declaration of the contractual rights and obligations of the landowners, the city, and the state with respect to the payment of the final condemnation award. This action resulted in a determination that the state and City of Providence were individually obligated to pay one-half the total condemnation award to CPI.

After that decision, the mayor of Providence publicly vowed to recoup the condemnation judgment through a retroactive tax based on the Superior Court's $110 condemnation valuation of the property.[3] True to its word, the city thereafter reas-

2. During the 1970s, various public and private groups conceived a plan for the revitalization of thirty acres of land stretching from the old Union Station to the State House in downtown Providence, Rhode Island. *Capital Properties, Inc. v. State*, 636 A.2d 319, 320 (R.I.1994). The General Assembly contributed to the effort by passing An Act Relating to Special Development Districts, P.L. 1981, ch. 332, § 1 (codified at G.L. 1956 chapter 24.4 of title 45). *Capital Properties, Inc.*, 636 A.2d at 320 (quoting § 45–24.4–1(d)). The act provided for "the appropriate, comprehensive, and coordinated development of railroad or former railroad properties and adjacent lands that are or may be the subject of railroad relocation projects involving federal, state, local, and private action" by permitting "the creation of special development districts" together with "special development district commissions" empowered to adopt, to implement, and to administer plans of development of such districts. *Id.* at 321. The City Council thereafter established the Capital Center Development District (Capital Center District) and created the Capital Center Commission to oversee the development of the district. Providence, R.I., Ordinance ch. 1982–54, No. 493 (Sept. 10, 1982). *Id.*

3. On August 20, 1997, Providence Mayor Vincent A. Cianci, Jr., in response to the condemnation award given by the Superior Court, stated in the Providence Journal that the judgment would "boomerang against the company * * * and produce a windfall for Providence." Gregory Smith, *Cianci Expects Last Laugh in $5.2 [Million] Judgment Against City*, Providence Journal, Aug. 20, 1997, at C1. The article went on to describe Cianci's intentions to assess $9 million in back taxes against CPI resulting from the new value assigned by the

sessed the ten CPI parcels based solely upon the $110 per square foot condemnation value assigned by the Superior Court and, moreover, assessed six years of back taxes on those parcels based on that value. With further disregard for the law, the city also assessed additional taxes on other CPI properties in the Capital Center District that had not been subject to the original condemnation proceedings. In response to the retaliatory tax assessments, CPI filed two complaints against the city alleging that its property was revalued in a selective and discriminatory manner and that the levy of approximately $7.9 million in taxes was improper.[4]

The city did not restrict its tax reassessments to parcels owned by CPI. In fact, the city went so far as to increase the taxes on four additional parcels in the Capital Center District. The landowners of these parcels are the plaintiffs in this case: Union Station Associates, East Office Building Associates, Parcel One Development Associates, Inc., and Commerce Center Associates, LLC. Like CPI, these landowners were assessed at the rate of $110 per square foot, with the tax applied retroactively for the years 1991 through 1996. Ultimately, their properties in the Capital Center District were burdened with liens for back taxes in aggregate totaling $3,565,971.72. As a result, on November 14, 1997, these plaintiffs filed a Superior Court action seeking legal and equitable relief from the excessive, illegal, and/or unconstitutional tax assessment imposed by the city.[5]

CPI's four civil actions were heard on cross-motions for summary judgment. On July 13, 1999, Superior Court Justice Thomas Needham issued a decision in *Capital Properties, Inc. v. State*, 1999 WL 551319 (R.I.Super.), granting summary judgment on all issues in favor of CPI. In his written decision, Justice Needham made the following findings:

"[T]his Court finds the tax assessments made by the City against CPI to be selective, arbitrary, and illegal. From the factual proffers provided by the parties, the Court concludes that the City intended to revalue only CPI's property in the Capital Center District. The tax assessments and reassessments were not made by the tax assessor as part of a 'definite and logical plan for all properties in the' City, but rather were based upon the fair market value of different real property in the Capital Center District as determined by the Superior Court in a condemnation proceeding.

court. The mayor alleged that as a result of the court-ordered $110 per square foot figure, the land in question had gone underassessed for tax purposes since 1990, and Cianci intended to collect any taxes owed. *Id.*

4. CPI also filed a third complaint against the city, alleging that the city condemned a parcel that CPI owned, referred to as parcel 9, in violation of the Redevelopment Act, G.L. 1956 chapters 31 to 33 of title 45. On December 3, 1998, this Court consolidated all matters pending between the parties to the CPI case before a single justice of the Superior Court with directions to "hear, and decide all claims and defenses, including, but not limited to, title to parcel 9, alleged unpaid taxes owed by CPI to the city, any agreements between the

city and the state, and any further unresolved claims between the parties." *Capital Properties, Inc. v. State*, 726 A.2d 12, 12 (R.I.1998) (mem.) (*Capital Properties I*).

5. In March 1999, the plaintiffs filed a second action challenging the assessment for 1998 as well as the previous assessments for 1991–1997. Also, in March 1999, plaintiff Union Station Associates was granted temporary injunctive relief requiring the city to issue a municipal lien certificate free of the disputed tax for the Cookson Building, one of the buildings in the Capital Center. The city complied with the court order and issued the certificates, allowing Union Station to consummate a sale of the realty.

The City's real property valuation method of utilizing the fair market value of real property as determined by the Superior Court in a condemnation proceeding to determine the fair market value of other real property for tax assessment and reassessment purposes is selective, arbitrary, and illegal. Therefore, this Court grants the motion for summary judgment filed by CPI against the City. This Court hereby *orders the City to expunge* all real property tax assessments and reassessments based upon the $110.00 per square foot fair market value as determined in the condemnation proceeding above and *permanently enjoins* the City from collecting taxes and accrued interest based upon this assessment and reassessment valuation method." *Id.* at *12. (Emphases added.)

In a footnote, Justice Needham referred to the possibility of additional illegal tax assessments against other landowners in the Capital Center District, stating

"The Court notes that other landowners of real property located in the Capital Center District also may have been assessed real estate taxes solely based upon the $110.00 per square foot fair market value determination of the Superior Court; however, the parties do not present sufficient facts to support such a conclusion. This Court concludes that such factual proffers would not change

the legal determinations contained herein." *Id.* at *12 n. 6.

The city appealed Justice Needham's decision to this Court.

After Justice Needham's ruling and while that appeal was pending, the Union Station plaintiffs sought to amend their civil actions. They now sought to include a writ of mandamus ordering the city to issue municipal lien certificates free and clear of any reference to the disputed taxes, or, in the alternative, to adjudge the City of Providence in contempt.[6] The plaintiffs argued that Justice Needham's decision, though on appeal, specifically and purposefully applied to all property that had become subject to the illegal retroactive tax. Thus, Union Station argued that the city could be compelled by writ of mandamus to issue "clean" municipal lien certificates pursuant to the order.[7] The plaintiff's motion to amend was granted on September 29, 1999.

On November 24, 1999, the Superior Court held a hearing on plaintiff's petition for a writ of mandamus. Justice Needham presided, noting on the record that he had been assigned the case by the Presiding Justice of the Superior Court in light of his familiarity with the issues raised in the petitions. Relying heavily on his decision in *Capital Properties*, Justice Needham reiterated that the tax assessments made by the city against the taxpayers were

---

6. The plaintiffs sought municipal lien certificates to facilitate a proposed sale of the property.

7. During the September 29, 1999 hearing on plaintiff's motion to amend to add the petition for the writ of mandamus, plaintiff's counsel conceded that at that time, no request for a clean municipal tax lien certificate had yet been made to the city. The record indicates, however, as plaintiff's counsel avers in its brief to this Court, that Union Station, by and through its attorneys, filed a written demand with the Providence City Tax Collector seeking issuance of clean tax bills in compliance with the *Capital Properties* decision on October 14, 1999. In its brief to this Court, plaintiff asserts that the city did not respond to its letter. Thereafter, the record indicates that on October 26, 1999, the city issued municipal lien certificates for the property owned by Union Station, Parcel One, and East Office Building that did not reflect any expungement of the illegal taxes and, moreover, contained interest computed to date relating to those illegal taxes.

"selective, arbitrary and illegal." He made clear that he had ordered the city to expunge the reassessments and permanently enjoined the city from collecting taxes based upon the reassessments, which he had previously found to be illegal. He further noted that he had ruled that the assessments were arbitrary and not part of a logical plan. Justice Needham also stated that although he did not know at the time of his decision in *Capital Properties* of any other landowners similarly situated as CPI, he had purposefully phrased his order and his decision in that case to benefit any taxpayer victimized by the city's scheme: "I think I made it awfully clear in the CPI case that I didn't want anybody in the City of Providence paying taxes based upon that illegal assessment, and * * * all I'm trying to [do is] make sure nobody has to."

In light of his previous decision, Justice Needham granted plaintiff's petition for mandamus, ordering the city to issue municipal lien certificates "free and clear of any illegal tax," refund any overpayment of taxes, issue new tax bills based on the last city wide valuation, and provide a full accounting. Justice Needham also awarded attorneys' fees occasioned by litigation related to the illegal tax. On November 26, 1999, the court issued an order reflecting its decision and directing the city to otherwise comply with Justice Needham's original *Capital Properties* decision. That order further directed plaintiffs to submit a demand for attorneys' fees so that the court could schedule a hearing to award a sum certain to the plaintiffs. The city filed a notice of appeal on November 29, 1999, along with a motion to stay the Superior Court ruling pending appeal.

Just days later, on December 2, 1999, this Court affirmed Justice Needham's decision in *Capital Properties*, adopting his decision as our own. *Capital Properties, Inc. v. State*, 749 A.2d 1069 (R.I.1999) (*Capital Properties II*). The very next day, we denied the city's motion for a stay of the trial justice's order of mandamus, holding that the issues in the Union Station case were essentially the same and therefore settled by our adoption of Justice Needham's decision as our holding in *Capital Properties II*. On March 21, 2000, we remanded this case to the Superior Court for a final resolution of all issues outstanding, including the assessment of attorneys' fees.

On July 14, 2000, six months after we issued our decision in *Capital Properties II*, CPI filed a motion for reasonable costs and attorneys' fees in Superior Court. A second trial justice (Justice Needham having deceased) granted the motion and thereafter awarded $258,375.11 to CPI. Not surprisingly, the city appealed the award, arguing that CPI was not entitled to any attorneys' fees under Rhode Island law.

During the same general time period, the Superior Court also held extensive hearings to determine appropriate attorneys' fees for the Union Station plaintiffs.[8] The court heard testimony by plaintiffs' lawyers, reviewed detailed memoranda and documentation of work done, and heard additional expert testimony as to the reasonableness of the submitted fees, rates, and time expended by counsel working on the matter. On February 7, 2002, the trial justice awarded attorneys' fees and costs in the amount of $316,239.99. In a written decision, the trial justice found that the city's "contemptuous behavior" forced the

---

**8.** The Superior Court held four full days of hearings from October 30 to November 2, 2000.

plaintiff's counsel to work additional hours. He further indicated that the city's persistent and baseless challenges of the same issues indicated bad faith on their part, pointing out that "[e]ven after [the] decision in *Capital Properties* * * * where the same tax issues were decided, the City persisted in 1999 in its efforts to collect the illegal taxes from the landowners." [9] The city subsequently asked the trial justice to reconsider the award, but the court denied that motion in a bench decision rendered on March 19, 2002. Final judgment was entered on March 20, 2002, and the city filed a timely notice of appeal on March 27, 2002.

In its appeal, the city made the following arguments:

(1) General Laws 1956 § 44–7–12(b) did not authorize an award of attorneys' fees to Union Station as a complainant taxpayer;

(2) Union Station, a complainant taxpayer, was not entitled to attorneys' fees under 42 U.S.C. § 1988 in its claim invoking 42 U.S.C. § 1983;

(3) Union Station, a complainant taxpayer, was not entitled to attorneys' fees under the Rhode Island Civil Rights Act, G.L. 1956 chapter 112 of title 42;

(4) The Superior Court lacked general equitable power to grant attorneys' fees to plaintiffs;

(5) Even if Union Station could invoke § 44–7–12(b) as a complainant taxpayer, attorneys' fees were not justi-

fied under the statute because there was a justiciable issue of law or fact; and

(6) Even if Union Station was entitled to attorneys' fees under § 44–7–12(b), 42 U.S.C. § 1983, or § 42–112–1, it was not entitled to fees incurred in the prosecution of its petition for a writ of mandamus, which was erroneously granted by the trial justice.

### Discussion and Analysis

After the parties in this case had submitted their briefs on appeal, this Court issued its opinion in *Capital Properties, Inc. v. City of Providence*, 843 A.2d 456 (R.I.2004) (*Capital Properties III*), holding that CPI was entitled to attorneys' fees for its challenges to the retaliatory tax assessment scheme under § 44–7–12(b).[10] Because the issues in that appeal substantially parallel those in this case, our holding in *Capital Properties III* essentially has made moot a majority of the arguments and claims that the city originally made at the time of its appeal.[11] The city acknowledges that the only issues remaining for this Court's consideration are the legality of the trial justice's issuance of a writ of mandamus and his award of attorneys' fees for Union Station's success on that petition.

### Mandamus

The thrust of the city's argument is that mandamus was not proper because Justice Needham's decision in *Capital Properties*

---

9. The trial justice also noted that the city did not file an objection to the reasonableness of the plaintiff's assertion of attorneys' fees, even though it had been given an opportunity to do so.

10. Opining that the plaintiff was entitled to attorneys' fees under G.L.1956 § 44–7–12(b), we did not address the other arguments made by both the city and the taxpayers.

11. We note that following this Court's decision in *Capital Properties, Inc. v. City of Providence*, 843 A.2d 456 (R.I.2004), the city filed a reply brief in which it stipulated to the resolution of several of its previous averments in this matter. In that brief, the city also reorganized its remaining arguments on appeal before this Court.

could neither create nor impose a mandatory and nondiscretionary duty owed by the city to the *Union Station* plaintiffs until this Court issued a final decision on the city's appeal of that decision. Before reaching the merits of this contention, however, we must first address plaintiff's argument that the city has waived its challenge to the writ of mandamus by failing to raise it at any point in the litigation.

It is an established rule in Rhode Island that this Court will not review issues that are raised for the first time on appeal. *State v. Grant*, 840 A.2d 541, 546 (R.I.2004). "According to our well settled 'raise or waive rule,' a litigant must make a timely and appropriate objection during the lower court proceedings before this Court will indulge the issue on appeal." *Id.* "[A] party who fails to assert his objections is deemed to have waived his rights on appeal unless the alleged error is one that is exhibited on the face of the record or one involving public policy." *Phelps v. Bay Street Realty Corp.*, 425 A.2d 1236, 1239 (R.I.1981). Moreover, we have cautioned that a general objection is not sufficient to preserve an issue for appellate review; rather, assignments of error must be set forth with sufficient particularity to call the trial justice's attention to the basis of the objection. *Grant*, 840 A.2d at 546–47; *State v. Bettencourt*, 723 A.2d 1101, 1107–08 (R.I.1999).

The plaintiff correctly points out that the city was not precise in its challenge to Union Station's mandamus petition before either of the trial justices who heard this matter in the Superior Court. We have reviewed the entire record, including transcripts, memoranda, and other exhibits of the parties, and similarly have been unable to find any such argument against the mandamus petition at any juncture of this case. Although the city offered several arguments opposing plaintiff's petition for a writ of mandamus, the record reveals no instance in which the city made the specific argument it now makes on appeal to this Court. Moreover, our examination of the record indicates that the city failed to make its argument at any time during the Superior Court's lengthy hearings on the amount of attorneys' fees to be awarded in this case.[12]

However, in light of this Court's keen interest in bringing this matter to a final conclusion and the important public policy interests implicated by both the city's illegal and retaliatory tax reassessment and its conduct during the litigation of both this case and *Capital Properties*, we are of the opinion that this case falls within the narrow exception to the "raise and waive rule" and accordingly will decide this matter on the merits. We chide the City of Providence for its failure to clearly set forth the arguments it now makes on appeal before any justice of the Superior Court, and we caution future litigants to ensure that they have made timely and appropriate objections in the lower courts of this state prior to seeking review in this Court.[13] Having disposed of plaintiff's ar-

---

**12.** We do note that defendant raised arguments similar to those herein in a memorandum filed before Justice Needham on November 19, 1999. In that memorandum, which was written in response to plaintiff's "Petition for Issuance of Writ of Mandamus or in the Alternative to Adjudge the City of Providence in Contempt," the city made most of the arguments it now makes here in response to plain-

tiff's alternative contempt motion, and not in the specific context of the mandamus petition.

**13.** We also note that on March 21, 2000, this Court issued an order remanding this case to the Superior Court in light of our decision in *Capital Properties, Inc. v. State*, 749 A.2d 1069 (R.I.1999). In that order, however, we specifically noted that "[f]ollowing the entry of final judgment in the Superior Court, either party

gument regarding the posture of this case, we now turn our attention to the merits of the city's argument.

■ The applicable standard of review in this case is well settled. This Court will not disturb the findings of a trial justice sitting without a jury in a civil matter "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I.1995) (citing *Gross v. Glazier,* 495 A.2d 672, 673 (R.I.1985) and *Lisi v. Marra,* 424 A.2d 1052, 1055 (R.I.1981)).

■ In Rhode Island,

"a writ of mandamus will issue only where the petitioners have a clear legal right to have the act done which is sought by the writ; and where the respondents have a ministerial, legal duty to perform such act without discretion to refuse; and where the petitioners have no plain and adequate remedy at law." *Adler v. Lincoln Housing Authority,* 623 A.2d 20, 25 (R.I.1993) (quoting *Gormally v. Cannon,* 119 R.I. 771, 776, 383 A.2d 582, 585 (1978)).

"It is well settled that mandamus will issue to compel a public officer, board, or commission to perform a ministerial duty." *Id.* (quoting *Aniello v. Marcello,* 91 R.I. 198, 202, 162 A.2d 270, 272 (1960)). Mandamus may issue to compel a municipal tax assessor to perform a ministerial and non-discretionary function. *See generally West Warwick School Committee v. Souliere,* 626 A.2d 1280, 1283 (R.I.1993); *Rosen v. Restrepo,* 119 R.I. 398, 380 A.2d 960 (1977). The writ will not issue, however, "to compel a public officer to perform an act the performance of which rests within his discretion." *Adler,* 623 A.2d at 25 (quoting

may appeal an adverse decision to this

*McKinnon v. Housing Authority of Pawtucket,* 114 R.I. 686, 688, 338 A.2d 517, 518 (1975)).

■ In this case, the city essentially argues that Justice Needham's original decision in *Capital Properties* did not place a defined ministerial duty upon the tax assessor to issue municipal clean lien certificates to plaintiffs. We disagree. Although Union Station was not a party to the *Capital Properties* litigation, Justice Needham's decision in that case unmistakably declared the tax reassessment scheme illegal for all properties so assessed in the Capital District. Moreover, his decision unconditionally and affirmatively ordered the city to expunge all assessments and reassessments that were based on the value of $110.00 per square foot and permanently enjoined the city from collecting taxes and accruing interest based upon the discredited reassessment method. The mere fact that Union Station was not a party to the *Capital Properties* decision in no way authorized the city to continue its illicit levy against those landowners. Rather, it is patently clear that Justice Needham's decision imposed a mandatory, non-discretionary duty upon the city to remove any and all vestiges of the illegal tax reassessment scheme with regard to all properties in the district:

"This Court hereby orders the City to expunge *all real property tax assessments and reassessments* based upon the $110.00 per square foot fair market value as determined in the condemnation proceeding above and *permanently enjoins* the City from collecting taxes and accrued interest based upon this assessment and reassessment valuation method." (Emphases added).

The city also urges that if Justice Needham's decision at any time imposed a legal

Court."

duty upon the city sufficient to support a writ of mandamus, that duty did not arise until this Court issued its opinion in *Capital Properties II*. To support this contention, the city points to our decision in *Nationwide Life Insurance Co. v. Annarino*, 727 A.2d 200 (R.I.1999), in which we held that the Superior Court lacked jurisdiction to issue a writ of mandamus ordering the City of Providence tax collector to issue a clean municipal lien certificate. In that case, however, we held only that the Superior Court lacked jurisdiction over the plaintiff's mandamus petition where the issues critical to plaintiff's entitlement to the writ previously were before the Bankruptcy Court. In the interests of comity and judicial economy, we concluded that because the Bankruptcy Court was vested with specific jurisdiction over the subject matter of the litigation, the Superior Court should have abstained from exercising jurisdiction over respondent's mandamus petition until the Bankruptcy Court had adjudicated the matter fully. *Nationwide* is wholly different and easily distinguishable from the matter presently before us. First, the Superior Court at all times held exclusive jurisdiction over the issues presented by Union Station, and at no time were any issues in this matter within the exclusive jurisdiction of any other court. Secondly, although the issues pertinent to the plaintiff's entitlement may have been on appeal to this Court, the trial justice was fully within his authority to grant the plaintiff's petition in keeping with his previous determinations in *Capital Properties*. We reject the suggestion that *Nationwide* has any applicability to the matter before us.

■ The city also asserts that it was excused from compliance with Justice Needham's decision with respect to the Union Station landowners while *Capital Properties* was on appeal. This argument is similarly without merit. The record clearly indicates that the city was neither expressly nor statutorily excused from complying with Justice Needham's original order in *Capital Properties*. At no time during the progression of this case or during *Capital Properties II* and *Capital Properties III* did this Court grant a stay of Justice Needham's original decision. Moreover, pursuant to Rule 62 of the Superior Court Rules of Civil Procedure, the city's appeal of Justice Needham's decision did not automatically stay the *Capital Properties* order.[14] It is crystal clear to this Court that Justice Needham enjoined the city from collecting taxes based on the illegal assessments. This Court granted no stay of the order and the city's appeal from the decision did not automatically stay its duty to comply with the order. Therefore, the city was under a non-discretionary obligation to abide by its terms at all times upon issuance.

■ We also conclude that plaintiffs in this case had no other plain and adequate remedy at law other than to seek a writ of mandamus. The record reveals that at the time Union Station filed its petition for mandamus, several of its properties were subject to purchase and sale agreements with buyers who had advanced substantial earnest money. To complete these sales, however, it was necessary for Union Station to convey title free and clear of any tax liens by the end of 1999. Thus, Union Station could consummate its proposed sales only if the city expeditiously issued

14. Rule 62(a) of the Superior Court Rules of Civil Procedure specifically establishes that "[u]nless otherwise ordered by the court, an interlocutory or permanent injunction or a judgment in a receivership action shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal."

tax certificates free and clear of any tax liens and assessments which violated Justice Needham's decision in *Capital Properties*. It is our opinion that this immediate need constituted an adequate ground on which to grant plaintiff's petition. Accordingly, we conclude that the trial justice did not err in issuing the writ of mandamus to the city.

### Attorneys' Fees

In its initial brief to this Court, the city argued that the trial justice had neither a statutory nor a contractual basis on which to award attorneys' fees to Union Station. In *Capital Properties III*, however, this Court recognized that § 44–7–12(b) vests the trial court with such authority in these circumstances. Section 44–7–12(b) provides:

> "The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from the collection of a municipal tax levy in which the court:
>
> (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
>
> (2) Renders a default judgment against the losing party."

Finding that the assessment and collection of taxes are two municipal practices "inextricably linked" and that the city's reassessment scheme appeared to be "little more than a thinly veiled retaliatory and illegal taxing scheme designed to recoup the cost of the 1997 condemnation award to CPI[,]" this Court concluded in *Capital Properties III* that § 44–7–12(b) applied to these facts and therefore authorized an attorney's fee award to CPI. *Capital Properties III*, 843 A.2d at 461–63.

On appeal, the city now accepts § 44–7–12(b) as a valid basis for attorneys' fees in the context of the tax reassessment scheme. However, the city argues that its

defense of the mandamus petition prior to the release of this Court's opinion in *Capital Properties II* presented a justiciable issue precluding the award of counsel fees under the statute. We again disagree. Although Union Station was not a party to Justice Needham's original order in *Capital Properties*, the order unequivocally declared the tax reassessment scheme to be illegal and unambiguously enjoined any further enforcement of it. In addition, the decision extended to all property owners who may have been affected by the tax reassessment, whether or not they were known or specifically named at the time of Justice Needham's ruling in *Capital Properties*. Furthermore, the fact that Justice Needham's decision was before this Court on review did not excuse the city from respecting its mandate. The record manifestly indicates that upon the issuance of Justice Needham's decision, the city continued the unlawful assessment in plain contravention of the order and at no time offered a sufficient or legitimate defense for its actions. While the city may have disagreed with Justice Needham's decision, it was at all times obliged to follow the Superior Court judgment. Accordingly, we hold that the city has failed to raise a justiciable issue of either law or fact that would bar attorneys' fees under § 44–7–12(b).

In light of our holding in *Capital Properties III*, we thus conclude that § 44–7–12(b) extends to the plaintiff's petition for mandamus. In Rhode Island, a mandamus action constitutes a "civil action" at law. *Hartman v. Carter*, 121 R.I. 1, 4, 393 A.2d 1102, 1104 (1978). Because the plaintiff's petition was necessitated solely by the conduct of the city "arising from the collection of a municipal tax levy," it constitutes a "civil action" within the ambit of § 44–7–12(b). Moreover, the city has made no attempt whatsoever to distinguish

the tax connivance scheme at issue in *Capital Properties III* from that at issue in this case. To the contrary, the reassessments and tax liens placed on the plaintiff's land in the Capital Center District were part of the same general extortionary design at issue in the *Capital Properties* trilogy. The city has presented no justiciable issue of law or fact to support its opposition to the writ of mandamus. Accordingly, we hold that the trial justice did not err in awarding attorneys' fees generated in the necessary prosecution of the mandamus petition.

## Conclusion

In light of the foregoing, we deny the city's appeal and affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.