**CAPITAL PROPERTIES, INC.**

v.

**CITY OF PROVIDENCE et al.**

**No. 2001–596–Appeal.**

Supreme Court of Rhode Island.

Jan. 30, 2004.

Gerald John Petros, Esq., Providence, for Plaintiff.

Caroline Cole Cornwell, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

SUTTELL, Justice.

A Superior Court award of attorneys' fees brings this protracted controversy before this Court for the third occasion. The defendant, City of Providence (the city), appeals from an award of costs and attorneys' fees to the plaintiff, Capital Properties, Inc. (CPI). The city asserts that the motion justice erred in his interpretation of both Rhode Island and federal statutory law, and by finding that the court has the inherent authority to award attorneys' fees. For the reasons stated herein, we affirm the judgment of the Superior Court.

### Facts and Procedural History

The genesis of this litigation is a civil action filed by CPI in 1988, seeking a determination of the fair market value of property condemned by the State of Rhode Island (the state) for the Providence River Relocation–Memorial Boulevard Extension Project. CPI was awarded condemnation damages in the amount of $10,653,328.03. The state thereafter filed a declaratory judgment complaint to determine the contractual rights and obligations of the city, state, and CPI, with respect to payment of the final judgment in the condemnation case. This action resulted ultimately in a determination that the state and the city were each contractually obligated to pay one-half of the total award.

Approximately three months after CPI was awarded condemnation damages, it received tax bills from the city reflecting large increases in the valuations of ten parcels that CPI owned as of December 31, 1996. Essentially, the city reassessed CPI's property solely based upon the condemnation value of $110 per square foot as determined by the Superior Court.[1] Two

---

1. The assessments increased as follows: (valuation is per square foot)

Assessor's Plat No. 19, Lot 102: $30 to $110, Lots 103, 105, 113, 114, 118, 119: $75 to

weeks later, the city mailed additional bills to CPI, applying the increased valuations retroactively to years 1991 through 1995. The reassessed values were also carried forward to the tax assessment of December 31, 1997.

CPI filed two complaints against the city, alleging that its property was revalued in a selective and discriminatory manner for the years 1991 through 1997 and that the levy of approximately $7.9 million in new taxes was improper. While these suits were pending, the city also issued tax sale notices to CPI dated January 28, 1999, that said, "the Real Estate in the City [ ] assessed in your name on December 31, 1997 and prior will be offered for Tax Sale at Public Auction on June 3, 1999" in an effort to collect the purported back taxes owed and accrued interest thereon.

On December 16, 1998, CPI filed a third complaint against the city, alleging that the city condemned a parcel that CPI owned, referred to as Parcel 9, in violation of the Redevelopment Act, G.L.1956 chapters 31 to 33 of title 45.

On December 3, 1998, this Court consolidated all matters pending between the parties before a single justice of the Superior Court with directions to "hear, and decide all claims and defenses, including, but not limited to, title to [P]arcel 9, alleged unpaid taxes owed by CPI to the city, any agreements between the city and the state, and any further unresolved claims between the parties." *Capital Properties, Inc. v. State*, 726 A.2d 12, 12 (R.I.1998) (mem.) (*Capital Properties I*).

The four civil actions CPI filed were heard by the motion justice on cross-motions for summary judgment. In a written decision, he determined that the state was contractually bound to pay the full condemnation award to CPI, but that the city was obligated to reimburse the state one-half the final judgment. He further entered summary judgments in favor of CPI on all its complaints against the city, finding that the city's increased assessments and imposition of taxes retroactively were "selective, arbitrary, and illegal." He then ordered the city to "expunge all real property tax assessments and reassessments based on the $110.00 per square foot market value as determined in the condemnation proceeding." He further found that the city's condemnation of Parcel 9 was "arbitrary, capricious and done in bad faith."

On appeal, we held that the "appeals by the state, the city, and the Providence Redevelopment Agency [were] without merit," and adopted the motion justice's decision as our own.[2] *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1073 (R.I. 1999) (*Capital Properties II*).

On July 14, 2000, six months after remand to the Superior Court, CPI filed a motion for reasonable costs and attorneys' fees. A second motion justice (the first motion justice having deceased) granted the motion in a written decision filed on October 26, 2000. Thereafter, the second motion justice held a hearing to determine the amount of the costs and fees in issue, and awarded $258,375.11 to CPI in a written decision on November 6, 2001. The city timely appealed, arguing that the motion justice erred by considering the fee request because it was not filed in a timely manner, erred in his statutory interpreta-

$110, and Lot 109: $18.75 to $110; Assessor's Plat No. 4, Lot 247 (246,037 sq. ft.): $20 to $110 and (30,000 sq. ft.): $2 to $10, and Lot 252: $5 to $75.

2. We did modify, however, the state's payment of its 50 percent share of the award to CPI based on a waiver entered in open court by counsel for CPI. *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1073 (R.I.1999).

tion of both state and federal law, and also erred in holding that the court has the inherent powers to award attorneys' fees.[3]

## Discussion

■ "It is well settled that attorneys' fees may not be appropriately awarded to a prevailing party absent contractual or statutory authorization." *Insurance Company of North America v. Kayser–Roth Corp.*, 770 A.2d 403, 419 (R.I.2001). As no contractual predicate exists for an award of attorneys' fees to CPI, any authority for such an award must necessarily derive from either statute or this Court's inherent equitable powers. *See Vincent v. Musone*, 574 A.2d 1234, 1235 (R.I.1990) (per curiam); *Cheetham v. Cheetham*, 121 R.I. 337, 342, 397 A.2d 1331, 1334 (1979).

The motion justice based his decision awarding attorneys' fees upon the following four grounds: (1) a Superior Court judgment in a distinct but similar action was persuasive precedent under the principle of *stare decisis;* (2) the provisions of G.L.1956 § 44–7–12(b), which permit the court to "award a reasonable attorney's fee to the prevailing party in any civil action arising from the collection of a municipal tax levy * * *"; (3) the inherent authority of the Superior Court to award attorneys' fees in the interests of justice; and (4) the provisions of 42 U.S.C. § 1988, which authorizes attorneys' fees to a party that successfully has vindicated a federal constitutional or statutory claim.

## Timeliness

Initially, the city argues that CPI's request for attorneys' fees is untimely, and the lateness of its filing "precludes even the consideration of the award of an attorney fee to CPI." CPI filed its "Motion for Costs and Attorneys' Fees" on July 14, 2000, fully one year after summary judgments were entered, nearly ten months after final judgments were entered under Rule 54(b) of the Superior Court Rules of Civil Procedure, and six months after we remanded the case to the Superior Court "for issuance of execution on the summary judgments already rendered and for further proceedings relating to issues that are still pending before the Superior Court in respect to the parties to this litigation." *Capital Properties II,* 749 A.2d at 1073.

CPI counters that the city never presented this "lateness" argument to the motion justice, thereby precluding appellate review. We repeatedly have said that we will not address issues for the first time on appeal. *In re Damien M.,* 819 A.2d 213, 213–14 (R.I.2003) (mem.). A review of the record reveals that the city indeed raised a timeliness issue before the award of attorneys' fees. The city's assertion, however, was that CPI's motion was "premature." The city contended that the federal constitutional claims raised by CPI in its complaints had been severed before the motions for summary judgment were heard, and therefore "attorneys' fees and costs are simply not ripe for consideration * * * before it has been fully litigated." Only after the motion justice granted CPI's motion for costs and attorneys' fees did the city assert in a "Motion for Clarification/Reconsideration of the Decision of October 26, 2000" that CPI had made its request too late.

■ The Superior Court Rules of Civil Procedure do not provide for a motion to reconsider. Assuming, however, without deciding, that an issue presented for the first time in a motion to reconsider is

---

**3.** In a written submission received by this Court on September 18, 2003, the City of Providence waived all issues on appeal other than the granting of reasonable costs and attorneys' fees.

properly preserved for appellate review, we hold that CPI's request for costs and attorneys' fees was timely made.

The city advances several theories to support its untimeliness argument. First, it asserts that only the justice who presided at the trial has the discretion to award attorneys' fees, and in this case the trial justice died before CPI filed its motion seeking costs and attorneys' fees. Secondly, the city contends that CPI, by not objecting to the city's motion for certification of finality pursuant to Rule 54(b), effectively conceded that there existed "no just reason for delay of entry of final judgment," and thereby waived any opportunity to seek attorneys' fees.

These arguments to support the city's position that CPI's request was too tardily filed are predicated upon the assumption that the consideration of an award of attorneys' fees was inextricably linked to the merits of the claims litigated between the parties. We conclude, rather, that the issue of entitlement to attorneys' fees required a separate inquiry distinct from the resolution of the underlying claims. CPI's motion for costs and attorneys' fees raised issues that were collateral to, albeit closely connected with, the main causes of action, and was an independent claim that did not arise under either § 44–7–12(b) or ·42 U.S.C. § 1988 until CPI was determined to be the prevailing party. Thus, the inquiry need not commence until the underlying cause of action is complete. *See Marsh & McLennan of Arkansas v. Herget,* 321 Ark. 180, 900 S.W.2d 195, 197 (1995).

▬ The city further entreats us to seek guidance from Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure that requires a motion for attorneys' fees to be filed no later than fourteen days after judgment is entered. Rhode Island has never adopted this rule, however, and we decline to do so by judicial fiat. We conclude, therefore, that in the absence of a statutory or procedural rule proscribing a specific time limitation, or unless actual prejudice can be shown, a request for attorneys' fees is timely if made within a reasonable time after judgment is entered.

In this case, at the time CPI filed its motion requesting costs and attorneys' fees, the litigation between the parties had not yet concluded. The constitutional claims had been severed prior to summary judgment and still were pending in July 2000. Indeed the city's motion for certification of finality pursuant to Rule 54(b) acknowledged that "claims and allegations of damages" had not yet been addressed. Moreover, on July 7, 2000, one week before CPI filed its motion for attorneys' fees, the city filed "Cross–Motions to Vacate Judgments" under Rule 60(b) of the Superior Court Rules of Civil Procedure, wherein it sought to vacate the judgments, orders, and factual findings made pursuant to CPI's earlier motion for summary judgment. In light of the protracted and continuing nature of the controversy between the parties, we are satisfied that CPI's request for attorneys' fees was timely filed. We proceed, therefore, to address the underpinnings of the motion justice's decision.

### The Plain Language of G.L.1956 § 44–7–12(b)

▬ The motion justice held, *inter alia,* that CPI was entitled to attorneys' fees pursuant to § 44–7–12(b). Questions of statutory interpretation are reviewed *de novo* by this Court. *State v. Fritz,* 801 A.2d 679, 682 (R.I.2002) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)). " '[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the

statute their plain and ordinary meanings' in establishing and effectuating statutory intent." *Providence Journal Co. v. Rodgers*, 711 A.2d 1131, 1134 (R.I.1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). Section 44–7–12(b) states:

"The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from the collection of a municipal tax levy in which the court:

(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or

(2) Renders a default judgment against the losing party."

To analyze whether recovery was proper under § 44–7–12(b), we will examine the three requirements of the statute: (1) whether CPI was the prevailing party in the civil action; (2) whether the civil action arose from the collection of a municipal tax levy; and (3) whether there existed a complete absence of a justiciable issue of either law or fact raised by the losing party.

### 1. CPI is the Prevailing Party

The entry of summary judgments in favor of CPI, as affirmed by this Court, on both complaints alleging the illegal imposition of taxes allows for no other conclusion than that CPI is the prevailing party.

### 2. The Civil Action Arises from the Collection of a Municipal Tax Levy

The city argues that § 44–7–12(b) is not applicable to the case at hand because it is in the chapter of the General Laws entitled "Collection of Taxes." It asserts that appropriate remedies for alleged improper assessments are limited to those found in G.L.1956 chapter 5 of title 44 entitled "Levy and Assessment of Local Taxes." Such an interpretation overlooks the fact that the assessment of taxes and the collection of taxes are inextricably linked. Moreover, the city sent tax bills to CPI and subjected CPI to collection actions by mailing tax-sale notices that threatened the sale of CPI's property at public auction for nonpayment. This action by the city moved the illegal assessment action into the realm of illegal collections. This lawsuit was a direct result of the attempt by the city to collect a municipal tax levy.

The motion justice cogently reasoned that an earlier version of § 44–7–12 applied only to tax collectors, and "simply provided a cause of action to tax collectors." The statute was amended in 1990, however, to allow an award of a "reasonable attorney's fee to the prevailing party in any civil action arising from the collection of a municipal tax levy * * *." *See* P.L.1990, ch. 371, § 1. The motion justice found the statutory language as currently codified to be "clear and unambiguous regarding the award of attorneys' fees." We agree.

### 3. There was no Justiciable Issue of Either Law or Fact Raised by the City of Providence

■ Section 44–7–12(b)(1) requires a "complete absence of a justiciable issue of either law or fact raised by the losing party." It is important to first note that we affirmed the Superior Court's grant of motions for summary judgment on the underlying issues in this case. Summary judgment is granted only when there is no genuine issue of material fact, and "the moving party is entitled to judgment as a matter of law." *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002) (citing *Heflin v. Koszela*, 774 A.2d 25, 29 (R.I.2001)). The record before the Court discloses that there was no justiciable issue of fact raised.

■ We also hold that there was no justiciable issue of law. The city's position

was wholly without merit; the city had no legitimate basis upon which selectively to conduct a reassessment of CPI's properties. As we stated in *Picerne v. DiPrete*, 428 A.2d 1074, 1078 (R.I.1981), "[w]e wish to make clear that correcting past inequities without a general revaluation is not illegal per se or violative of constitutional uniformity or equal-protection provisions. But when the tax authorities act out of improper or discriminatory motives, the legitimacy of the revaluation process ends."

The thrust of the city's argument is that, upon learning of the Superior Court decision in the condemnation case, the city tax assessor reviewed the decision, as well as the comparable sales data and expert appraisals that had been placed into evidence. He then determined that approximately thirty-five lots located within the Capital Center District had been incorrectly assessed as of December 31, 1987, the date of the last general property revaluation in the city. The city, therefore, applied a $110 per square foot assessment to said lots for 1997, "with adjustments downward for those lots whose topography or other features dictated a lower value." These assessments simply were carried forward for tax years 1998 and 1999.

The city further avers that "[a]s the parcels in the District had been underassessed (and taxed) relative to all other property in the [c]ity, [the city] acted to correct the assessments thereof retroactively for six years pursuant to R.I.G.L. § 44-5-23."

In *Capital Properties II*, 749 A.2d at 1085, however, we concluded that § 44-5-23 did not apply in that the tax assessments were neither "omitted in the assessment" nor erroneously assessed. Section 44-5-23 provides in part:

"**Assessment of back taxes on real estate.**—If any real estate liable to taxa-tion in any city or town has been omitted in the assessment of any year or years and has thereby escaped taxation, or if any tax has been erroneously or illegally assessed upon any real estate liable to taxation in any city or town in any year or years, and because of the erroneous or illegal assessment the tax cannot be collected, or if paid has been recovered, the assessor of taxes of the city or town in the next annual assessment of taxes after the omission or erroneous or illegal assessment is known to him or her shall assess or reassess, as the case may be, a tax or taxes against the person or persons who were the owner or owners of the real estate in the year or years, to the same amount to which the real estate ought to have been assessed in the year or years."

█ It is undisputed that the property was not omitted from the previous revaluation. "[T]he term 'omitted property' as applied in the tax statutes means property that the tax assessor has not assessed at all and does not mean property that the tax assessor has undervalued." *Capital Properties II*, 749 A.2d at 1085. Furthermore, an "erroneous assessment" is one that deviates from the law and is thus invalid; it "is a defect that is jurisdictional in its nature, and does not refer to the judgment of the assessing officer in fixing the amount of valuation of the property." *Id.* (quoting Black's Law Dictionary 542 (6th Ed.1990)). The city set forth absolutely no argument of jurisdictional defect, and provided absolutely no authority for any other interpretation of "erroneous assessment."

We also held in *Capital Properties II*, 749 A.2d at 1086, that "[t]he [c]ity's real property valuation method of utilizing the fair market value of real property as determined by the Superior Court in a condemnation proceeding to determine the

fair market value of other real property for tax assessment and reassessment purposes is selective, arbitrary, and illegal."

Here, the city's actions amounted to little more than a thinly veiled retaliatory and illegal taxing scheme designed to recoup the cost of the 1997 condemnation award to CPI. The city then followed its wrongful assessment with a rather hamhanded attempt to collect the unlawful levy by threatening to sell the property at public auction. Under the circumstances, CPI was forced to adopt an aggressive legal strategy. The city's defense of its "selective, arbitrary, and illegal" tax assessments of the CPI properties was wholly without merit. Therefore, we agree with the motion justice's ruling that attorneys' fees may be awarded to CPI pursuant to § 44–7–12(b) because there was no justiciable issue of law or fact present.

As we conclude that the provisions of § 44–7–12(b) clearly vest the trial court with the authority to award attorneys' fees in this matter, we need not address the three other grounds upon which the motion justice predicated his decision.

### Conclusion

In summary, we conclude that in this case the statutory provisions of § 44–7–12(b) allow for reimbursement of reasonable costs and attorneys' fees to the plaintiff. Therefore, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.