[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Following a final decision on the merits of the above captioned controversies, Weybosset Hill Investment, Inc. ("WHI" or "plaintiff") has moved this Court for an award of attorneys' fees. The defendant tax assessor ("tax assessor" or "defendant") has timely filed an objection. Jurisdiction is pursuant to G.L. 1956 § 44-5-26.
 FACTS AND TRAVEL
The details of the underlying case have been fully related in this Court's decision on the merits of this action, at Weybosset Hill Inv.,LLC v. Rossi, No. PC 99-2047, PC 99-4094, PC 00-3481, PC 01-2065, 2002 LEXIS 113 (R.I. Super. Ct. Aug. 6, 2002) and the Supreme Court's opinion affirming it, at Weybosset Hill Inv., LLC v. Rossi, 857 A.2d 231 (R.I. 2004). Therefore, a brief recitation of the facts will suffice.
In 1987, the City of Providence ("City") had conducted a decennial real estate revaluation for purposes of tax assessments. A piece of real property, designated as Assessor's Plat 24, Lot 626, the subject of this controversy, was assessed at $10,425,400 at that time. This valuation was carried forward each tax year following. In March of 1999, WHI bought the subject property from Blue Cross Blue Shield of Rhode Island for the price of $3,592,000. In connection with this transaction, WHI took an assignment of all of the seller's claims, rights, remedies, entitlements and obligations relating to pending appeals of the 1996, 1997, and 1998 tax assessments; the plaintiff later appealed the 1999 assessment as well. Pursuant to § 44-7-26, following the defendant's and the Board of Tax Review's denials of WHI's appeals, the plaintiff sought review in this Court, seeking a reduction in the assessed value of the property and a judgment for the return of money it had overpaid due to excessive assessments.
At trial of the plaintiff's consolidated tax appeals, the plaintiff presented expert testimony that the property was worth $3,495,000 in 1997; $3,895,000 in 1998; $2,500,000 in 1999; and $5,400,000 in 2000.See Weybosset, 2002 R.I. Super. LEXIS at *5. The records produced at trial indicated that the defendant had valued the property in 1987 using a "replacement-cost (new) minus depreciation approach." Id. at *28. The defendant presented no evidence to support this assessment. Id. at * 34. This Court, crediting the plaintiff's expert witness, found that WHI had rebutted any presumption of validity to which the assessments were entitled and entered judgment for the plaintiff. Id. The Court ordered the tax assessor to reduce the assessments to the values proved by the plaintiffs, and return to WHI all of the excess taxes paid during the years at issue. Id. After the defendant's unsuccessful appeal to the Supreme Court, the plaintiff filed the motion presently before the Court, for attorneys' fees and costs.
 PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
The plaintiff advances two theories to support its motion for attorneys' fees. First, relying on the Supreme Court's recent decision inCapital Properties, Inc. v. City of Providence, 843 A.2d 456 (R.I. 2004), WHI argues that this Court is authorized to award fees pursuant to G.L. 1956 § 44-7-12(b). In the alternative, the plaintiff argues that this Court has the inherent power to award attorneys' fees in the interest of justice, citing Vincent v. Musone, 574 A.2d 1234, 1235 (R.I. 1990). Since Capital Properties was decided, and while the present motion has been pending, the Supreme Court has revisited the issue of attorneys' fees, in Union Station Assoc. v. Rossi, No. 2002-454, 2004 LEXIS 184 (R.I. Dec. 8, 2004). Although the parties have not relied on the case, the Court must consider it in rendering its decision.
"It is well settled that attorneys' fees may not be appropriately awarded to a prevailing party absent contractual or statutory authorization." Capital Properties, Inc., 843 A.2d at 459 (quoting Ins.Co. of North America v. Kayser-Roth Corp., 770 A.2d 403, 419 (R.I. 2001)). As it is undisputed in the instant case that attorneys' fees are not contractually available, the Court must determine whether there is a statutory basis for awarding them.
In Capital Properties, the Supreme Court affirmed a Superior Court justice's decision to award attorneys' fees to a party prevailing against the City in a dispute over tax assessments. In May of 1997, a justice of the Superior Court had awarded Capital Properties Investments, Inc. ("Capital Properties") over ten million dollars in damages as compensation for the condemnation, through eminent domain, of certain Providence real estate. See Capital Properties, Inc. v. State,749 A.2d 1069, 1075 (R.I. 1999). On August 20, 1997, Providence Mayor Vincent A. Cianci, Jr. was reported in the Providence Journal as stating that the judgment would "boomerang against the [plaintiff] company . . . and produce a windfall for Providence" because by using the Superior Court's condemnation valuation (of $110 per square foot) to retroactively increase property taxes on the parcel, the City would recover approximately nine million dollars in back taxes.[1] Union Station, 2004 LEXIS 184 at *4 n. 3 (citing Gregory Smith, Cianci Expects Last Laugh in$5.2 [Million] Judgment Against City, Providence Journal, Aug. 20, 1997, at C1).
The City, after effectuating the described tax increase, followed up by threatening to collect the back taxes by selling the property at a public auction. Capital Properties, 843 A.2d at 463. The City then went on to use the same valuation to retroactively increase the taxes on four additional parcels in the Capital Center District, including one owned by Union Station Associates ("Union Station"). Union Station, 2004 LEXIS 184, at *5. The owners of these parcels filed various suits in Superior Court seeking legal and equitable relief from the retroactive increases in taxes. Id. Justice Needham of the Superior Court eventually found the retroactive tax assessments to be "selective, arbitrary, and illegal," ordered the City to "expunge all real property tax assessments and reassessments" found to be illegal, and permanently enjoined the City from collecting taxes and interest based on the illegal assessments.Capital Properties, Inc. v. State, C.A. Nos. 88-1654, 98-2525, 97-4199, 98-5202, 98-6254, 1999 LESIX 24, *40-41 (R.I. Super. Ct. July 13, 1999). The City, however, feeling that it was not bound by the decision as to Union Station's property, did not comply with Justice Needham's order with respect to that property, and "persisted in its attempts to collect these taxes from the landowners." Union Station, 2002 R.I. Super. LEXIS 17, at *6. Union Station and its fellow plaintiffs therefore petitioned the Superior Court to issue writ of mandamus ordering the City to issue clean municipal lien certificates and stop enforcing the illegal taxes.Id. at *6-7. The petitions were granted on November 26, 1999. Id. at *7.
In subsequent proceedings, the Supreme Court awarded attorneys' fees to the plaintiffs in Capital Properties and to the plaintiffs seeking mandamus relief in Union Station. In doing so, the Court relied on §44-7-12(b), which provides:
 "The court may award a reasonable attorney's fee to the prevailing party in any civil action arising form the collection of a municipal tax levy in which the court:
 (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
 (2) Renders a default judgment against the losing party."
In Capital Properties, the Supreme Court set forth a three part test to be employed in determining whether an award of fees would be proper: (1) whether the movant was the prevailing party; (2) whether the civil action arose from the collection of a municipal tax levy; and (3) whether there existed a complete absence of a justiciable issue of either law or fact raised by the losing party. Capital Properties, 843 A.2d at 461.
In the instant matter there can be no dispute that WHI is the prevailing party, having obtained the judgment petitioned for, as well as restitution of overpayments. The more difficult question is whether the plaintiff's action "arose from the collection of a municipal tax levy." The plaintiff in this case, like the plaintiff in Capital Properties,
initiated proceedings against the City pursuant to § 4-5-26, which provides the procedure to be followed by one appealing an assessment of taxes. In Capital Properties, however, not only did the City illegally revalue the property at issue and make the assessment retroactive, but the City also "followed its wrongful assessment with a rather ham-handed attempt to collect the unlawful levy by threatening to sell the property at public auction." Id. at 463. The Supreme Court held that the actions of the City in threatening the sale of the plaintiff's property at auction for nonpayment "moved the illegal assessment action into the realm of illegal collection." Id. at 462.
In Union Station, the Supreme Court concluded that a petition for a writ of mandamus constituted a "civil action," and that Union Station's was "necessitated solely by the conduct of the city `arising from the collection of a municipal tax levy,'" because "the city continued the unlawful assessment in plain contravention of [Justice Needham's]order, and at no time offered a sufficient or legitimate defense for its actions." Union Station, 2004 LEXIS 184 at *28.
Such is not the case in the matter presently before the Court. WHI's action is a simple appeal of a tax assessment dating back to a 1987 city-wide reevaluation. While our Supreme Court has stated that "the assessment of taxes and the collection of taxes are inextricably linked,"Capiltal Properties, 843 A.2d at 461, this Court must note that an appeal from an assessment under chapter five of title forty-four of the General Laws is a separate and distinct cause of action from one arising from the collection of a levy under chapter seven of that title. Chapter five, governing "Levy and Assessment of Taxes," does not provide for awarding attorneys' fees, while chapter seven, governing "Collection of Taxes," does. If the state legislature had intended that plaintiff prevailing in assessment appeals be awarded attorneys' fees, it would have specifically provided for such an award in chapter five. It did not. The legislature's failure to include a provision in a statute indicates that the exclusion was intentional. 2A Norman J. Singer, Statutory Construction § 47.38 at 291 (5th ed. 1992). This Court cannot stretch the meaning of "collection" so far as to reach the instant case.
Having found that WHI's action does not arise from the collection of a municipal levy, the Court need not proceed to the third step, but for completeness, will touch upon it briefly. In Capital Properties, the Supreme Court held that there was a complete absence of a justiciable issue of either law or fact raised by the City. Capital Properties,843 A.2d at 462. That the case was decided on summary judgment was held to indicate that there were no factual issues. Id. at 461. Further, the Court held that there was no justiciable issue of law because the City's position was wholly without merit. Id. at 461-62. In Union Station, the court held that it was "patently clear that Justice Needham's decision imposed a mandatory, non-discretionary duty upon the city to remove any and all vestiges of the illegal tax reassessment scheme with regard to all properties in the district," and that the City had not presented any justiciable issue of law or fact to support its opposition to or failure to comply with, the writ of mandamus. Union Station, 2004 LEXIS 184, at *22, 29.
In the instant case, however, there were justiciable issues of law and fact, though admittedly, "just barely." Cf. Brenner v. Pitas, No. P.C. 01-1476 2003 LEXIS 96, *6 (R.I. Super. Ct. July 24, 2003. The defendant's arguments that WHI lacked standing and that an assessment appeal was not an assignable cause of action each had an arguable basis in law and fact,[2] and were not "clearly frivolous." See Bucci v. Anthony,667 A.2d 1254, 1256 (R.I. 1995); Greensleeves, Inc. v. Smiley, 754 A.2d 102
(R.I. 2000). Because the plaintiff's action did not arise from the collection of a municipal tax levy and there was not a complete absence of a justiciable issue of law or fact, this Court must deny WHI's motion for attorneys' pursuant to § 44-7-12(b).[3]
The plaintiff has argued in the alternative that this Court should exercise its inherent power to fashion an appropriate remedy to award attorneys' fees in this case. WHI contends that such an award is in the interests of justice because the tax assessor had no basis to assess the subject property at the amount he did, and because throughout this litigation — lasting over five years — the defendant "constantly and inexcusably asked for continuances to delay the final resolution of this matter." (Plaint. Mem. at 5.) WHI notes that the defendant filed a motion to amend his answers to add affirmative defenses two months before trial,[4] and petitioned the Supreme Court for review when it was denied. Id. In addition, the plaintiff notes that while that decision was pending, and after the Supreme Court's decision had been entered, the defendant repeatedly moved for continuances; the trial date was rescheduled five times. Id. After this Court's decision issued, the defendant appealed, filing two motions to extend the time allowed to file his Rule 12A Statement. Id. at 6. Lastly, the plaintiff notes, the defendant filed four motions to extend time to submit his appellate brief, finally submitting it sixteen months after the conclusion of the trial.
The defendant argues that its behavior through the course of this suit was not "quantifiabl[y] egregious," and not the type of "contumacious actions" that would merit sanctions. (Def. Mem. at 4.) In addition, the defendant contends that only the Supreme Court, not the Superior Court, has the inherent power to award attorneys' fees.
Attorneys' fees are customarily awarded where a party engages in bad faith conduct; it is in these situations that courts are able to exercise their inherent power to award attorneys' fees as a sanction. See Chambersv. NASCO, Inc., 501 U.S. 32, 53 (1991) (court's inherent power to award attorneys' fees against litigants guilty of bad faith "depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation"); Whitney Bros. C. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995) ("It is beyond serious dispute that a district court may use its inherent powers to assess attorneys' fees against a party that has `acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") Our Supreme Court has recognized that the courts of this State have the inherent power to award attorneys' fees as part of their power to fashion an appropriate remedy in the interests of justice.[5] See Vincent,574 A.2d at 1235.
However, this Court notes that the award of fees on this basis is generally reserved for the most "exceptional" cases. See Alyeska PipelineService Co. v. Wilderness Society, 421 U.S. 240, 256 (1975). The parties have cited only one Rhode Island case in which the court awarded fees in an exercise of its inherent powers. See Vincent, 572 A.2d at 1235 (remanding for a new trial and awarding fees from the first trial to defendant when plaintiff was allowed to amend his pleadings to add a claim on the first day of trial). "[E]ven when inherent powers legitimately can be invoked, they must be exercised with restraint and circumspection, both `because [they] are shielded from direct democratic controls' and `because of their very potency.'" United States v. Horn,29 F.3d 754, 760 (1st Cir. 1994); see also Whitney Bros., 60 F.3d at 14
(citing Chambers, 501 U.S. at 44).
While the Court is troubled by the defendant's lengthy delays during the course of this litigation, the plaintiff has not shown these delays to have been the product of bad faith on the part of the defendant. Thus, this is not such an "exceptional" case as to call for such a rare exercise of this Court's inherent powers. See MacLane, Graf, Raulerson, Middleton, P.A. v. Rechberger, 280 F.2d 26, 41-43 (1st Cir. 2002) (upholding a district court's refusal to grant sanctions under its inherent power, because, although the district judge expressed disapproval with the conduct, the denial of sanctions is accorded "extraordinary deference"). As a result, the Court, in its discretion, denies the plaintiff's Motion for Attorneys' Fees.
 CONCLUSION
Because the requirements of § 44-5-12(b) have not been met, and because the Court does not find that the facts warrant an exercise of discretion to grant this extraordinary relief, the plaintiff's motion for fees is denied and the parties shall bear their own costs. The parties are directed to submit an appropriate order for entry.
[1] The State of Rhode Island was held liable for half of the condemnation award. Union Station, 2004 LEXIS 184 at *4.
[2] See Weybosset Hill Inv., 2002 R.I. Super. LEXIS 113 at *10 (noting that the issue of whether a plaintiff ahs standing is a "mixed question of law and fact," citing Cummings v. Shorey, 761 A.2d 680, 684 (R.I. 2000)).
[3] The Court is mindful that § 44-7-12(b) does not mandate, but simply permits, an award of attorneys' fees. Assuming the section did apply, this Court would hesitate to grant the plaintiff's motion. While the defendant's actions leading up to and during this litigation have not been laudable, they do not evidence a "tax connivance scheme" that was part of a "general extortionary design" at issue in Union Station andCapital Properties.
[4] This motion was denied as untimely by the motion justice; this Court also found that by failing to raise the claimed defenses initially, the defendant had waived them. Weybosset Hill Inv., 2002 R.I. Super. LEXIS 113, at *24.
[5] Other jurisdictions recognize the power to award fees as an inherent judicial power. The New Hampshire Court, for example, has held that "[a] constitutionally created court [has the] power to award counsel fees in any action commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be."Aranson v. Schroeder, 140 N.H. 359, 371 (N.H. 1995); see also, YankeeCandle Co. v. Bridgewater Candle Co., 140 F. Supp. 2d 111, 121 (D. Mass. 2001) ("Indeed, courts have always had the inherent power to award attorneys' fees for suits brought `in bad faith, vexatiously, wantonly, or for oppressive reasons'") (citing Alyeska Pipeline Service Co.,421 U.S. at 258-59; 1 Robert L. Rossi, Attorneys Fees 346 (2d Ed. 1995)).