DECISION
Before this Court is Plaintiff Albert E. Hagenberg's Motion for Attorney's Fees and Costs pursuant to the Rhode Island Equal Access to Justice Act, G.L. 1956 § 42-92-1, et *Page 2 seq.. Mr. Hagenberg sought the payment of certain medical bills and this controversy has been settled. He now seeks fees incurred in these actions. For the reasons herein, the Court denies Mr. Hagenberg's Motion for attorney fees.
 FACTS AND TRAVEL
Albert Hagenberg is a retired Warwick Police Officer. In 1967, while on patrol, Mr. Hagenberg was assaulted by two men. One grabbed Mr. Hagenberg's gun and was getting ready to shoot him when another Warwick Police Officer arrived and intervened. Mr. Hagenberg was diagnosed with Post Traumatic Stress Disorder and retired from the police force in 1973. In 1979, the Warwick Board of Public Safety, (the "Board"), voted to pay all of Mr. Hagenberg's work-related medical benefits.[1] From 1979 to 2002, Mr. Hagenberg's medical bills for the treatment of his on the job injury were paid in full by the city, including bills for psychotherapy sessions and medications for hypertension, cholesterol, Post Traumatic Stress Syndrome and depression.
In 1999, Mr. Hagenberg was involved in a motor vehicle collision and needed to receive additional treatments. A debate between Mr. Hagenberg and the City ensued about the payment of some of the resulting medical bills.
In 2003, Mr. Hagenberg filed a complaint (KC No. 03-512) against the City, Board of Public Safety, and David Olsen as City Treasurer, for reimbursement of payment of the medical bills. The city questioned whether the treatments and medications from after the 1999 accident *Page 3 
were "casually connected" to his job related disability. In 2004, Mr. Hagenberg, individually and in his official capacity as the President of the Warwick Retired Police and Fire Association, Inc., filed a complaint for the lack of payment of post retirement, work-related medical expenses by the City for on-the-job injuries (KC No. 04-44).[2] These cases settled, and the only remaining issue is that of attorney's fees. Mr. Hagenberg has moved the Court for an award of attorney's fees and costs pursuant to the Rhode Island Equal Access to Justice Act ("EAJA"), § 42-91-1, et seq..
 ANALYSIS Equal Access to Justice for Small Businesses andIndividuals
It is well-settled in Rhode Island that attorney's fees may not be awarded absent contractual or statutory authorization. CapitalProperties, Inc. v. City of Providence, 843 A.2d 456, 459 (R.I. 2004) (quoting Insurance Company of North America v. Kayser-Roth Corp.,770 A.2d 403, 419 (R.I., 2001). Mr. Hagenberg claims he is entitled to an award of attorney's fees under the Equal Access to Justice for Small Businesses and Individuals Act ("EAJ"), G.L. 1956 § 42-92-3.
A threshold matter is whether there has even been an "adjudicatory proceeding" as required by the statute. If "the pertinent statutes and rules are neither equivocal nor ambiguous, there is no room for implication by judicial construction." Eleazer v. Ted Reed Thermal,Inc., 576 A.2d 1217, 1221 (R.I. 1990) Here, the statute states: "Whenever the agency conducts an adjudicatory proceeding. . . ." Section42-92-2(2) defines adjudicatory proceeding as:
 any proceeding conducted by or on behalf of the state administratively or quasi-judicially which may result in the loss of benefits, the imposition of a fine, the adjustment of a tax *Page 4 
assessment, the denial, suspension, or revocation of a license or permit, or which may result in the compulsion or restriction of the activities of a party.
No agency conducted an adjudicative proceeding here. This court is not reviewing an "underlying decision of the adversary adjudication" as required by § 42-92-3(b). The only dispute was in litigation before this Court. The Board never issued a decision and this Court is not reviewing a decision of an adversary adjudication. The instant case does not constitute an adjudicatory proceeding under the EAJ.
Even if the EAJ did apply, an award of attorney fees will not be granted if the agency was substantially justified in its decision.Krikorian v. D.H.S., 606 A.2d 671, 675 (R.I. 1993). Pursuant to the EAJ, an agency's decision is substantially justified when it is grounded by a "reasonable basis in law and fact." Section 42-92-2(7). Our Supreme Court has held that an agency's decision is substantially justified if it is "`clearly reasonable, well founded in law and fact, solid though not necessarily correct.'" Krikorian, 606 A.2d at 675 (citing Taft v.Pare, 536 A.2d at 893).
The EAJ was intended to mitigate the burden of arbitrary and capricious decisions by administrative agencies and to encourage individuals to appeal such decisions. See §§ 42-92-1 through 42-92-8;Taft v. Pare, 536 A.2d 888, 892 (R.I. 1988). Under the EAJ reasonable attorney's fees are available to certain prevailing parties. SeeKrikorian v. Rhode Island Department of Human Services, 606 A.2d 671
(R.I. 1993). The EAJ does not provide for fees if the agency action below was "substantially justified," meaning that "the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." Krikorian at page 675 (citing § 42-92-3(a) and (f)). *Page 5 
Mr. Hagenberg submits that the board was not substantially justified in several respects. First, Mr. Hagenberg argues that the only branch of municipal government authorized to deal with issues regarding benefits for retired disabled police and fire fighters was the Board of Public Safety and yet none of the decisions made regarding the termination of Mr. Hagenberg's benefits were made by the Board or by anyone acting by or through the Board. Those preliminary decisions (though they were mere queries) were made by Mr. Shelton, the Director of Personnel, Mr. Martin, the Human Resource Auditor, and Ms. Pearson an Assistant City Solicitor. Mr. Hagenberg then suggests that the city was not substantially justified in attempting to reduce his benefits per the lien provided to the City by G.L. § 45-19-1.2, (which provided a recovery of any payments made that it was not responsible for). Finally, Mr. Hagenberg argues that defendants lacked substantial justification in trying to force Mr. Hagenberg to submit to an unauthorized independent medical examination.
In response, the City never addressed whether Mr. Shelton, Mr. Martin, or Ms. Pearson were authorized to act for the Board. However it was only when Mr. Hagenberg refused to submit to a medical examination that Ms. Pearson suggested he should go before the Board of Public Safety.[3]
Before the Board, the City argued that Mr. Hagenberg was actually asking the Board to order payment for medical bills over and above the health insurance plan that was provided by ordinance. This was a reasonable contention. Ms. Pearson, Mr. Shelton, and Mr. Martin were not acting on behalf of the Board. Mr. Hagenberg recognized this by dealing with the individuals independently. Mr. Hagenberg's argument that they acted as one is specious and unsubstantiated.
Mr. Hagenberg's other arguments are also unsupported by the facts. From the outset, the City requested proof that the medical bills were related to the disability which resulted in his *Page 6 
retirement. Later in the dispute, the City argued that Mr. Hagenberg had already been reimbursed for some costs by the arbitration award of the 1999 collision. Mr. Hagenberg never articulated a clear demand until the trial commenced.[4] Verification of bills, cross-indexing them to benefits recovered collaterally, and weeding out duplicate payments was ongoing even at trial. It was Mr. Hagenberg who delayed in organizing his requests for payments. If he could not establish what was still owed, it is unrealistic to expect that the City would blindly make payments.
Mr. Hagenberg contends the City was unjustified in requesting an independent medical examination. The City asked Mr. Hagenberg to submit to three independent medical examinations to determine if the disability still existed, and agreed to accept the results of the first exam, if it favored Mr. Hagenberg. If Mr. Hagenberg simply submitted to the examination, much of this litigation may have been avoided. To determine if one medical condition is related to another, it was clearly reasonable to seek a medical opinion.
The City's initial contention (that the subsequent treatments were not causally connected) was well-founded. In fact: Mr. Hagenberg was involved in a 1999 accident and suddenly needed many more medical treatments. As Mr. Hagenberg was given an award for medical bills by the arbitrator, yet never told the City, this Court concludes that the City had solid justification to question the medical bills. Therefore, this Court finds that the City was substantially justified in its actions and consequentially, attorney's fees under the Equal Access to Justice Act are denied.
The travel here is easily distinguishable from the travel inKrikorian v. Rhode Island Department of Human Services, 606 A.2d 671,672 (R.I. 1992) where the trial court found the state substantially unjustified by denying an application for medical assistance, simply because a *Page 7 
relative had withdrawn money from a joint account. The City's position in contesting Mr. Hagenberg's individual medical bills, seeking verification, and understanding their purpose was reasonable and appropriate in light of the circumstances. The City was substantially justified in doing so. It is unreasonable to presume that a municipality will simply pay bills without verification and explanation. To request legal fees is just as inappropriate. The City's unanswered queries (requesting verification of the bills) continued for months, if not years. The City should not be punished for conducting its affairs as a responsible business — such was never intended by the EAJ statute.[5]
 CONCLUSION
After examining the record and the parties' respective memoranda, this Court denies Mr. Hagenberg's Motions for Attorney's Fees. The Court finds that the Equal Access to Justice for Small Businesses and Individuals, § 42-92-1, et seq. does not apply to the case at hand. Further, the City of Warwick and the Board of Public Safety were substantially justified in their actions.
[1] A letter from Warwick's then police chief, John F. Coutcher, dated June 28, 1979, provides, in part, as follows:
 As a result of [a meeting with Hagenberg, his attorney, and the Warwick Board of Public Safety], the [b]oard unanimously passed a motion that the city is indeed liable for the medical bills arising out of his service-connected illness. They also stated they felt that his illness was definitely service-connected, and he was entitled to these benefits under the Rhode Island General Laws, specifically, [ § ] 45-19-1.
[2] See the extensive travel of prior litigation between these parties set forth in Hagenberg v. Avedisian, 879 A.2d 436, 443 (R.I., 2005).
[3] This did not occur until late in 2003.
[4] For example, when questioned on a bill Mr. Hagenbeg would modify the amount that was owed because he remembered part of it had been paid.
[5] As the Court denies the request for fees, it need not delve into the standards for awarding fees as set forth in Rule 1.5 of the Rhode Island Rules of Professional Conduct and Colonial Plumbing HeatingSupply Co., v. Contemporary Construction Co., 464 A.2d 741 (1983). However the time and labor required of counsel and the results obtained are key factors in determining such awards.