June 30, 2023

**Supreme Court**

Robert Houllahan     :

   v.        :    No. 2021-32-Appeal.
               (PC 20-2010)
Louis E. Gelineau et al.    :

Peter Cummings     :

   v.        :    No. 2021-33-Appeal.
               (PC 19-10530)
Louis E. Gelineau et al.    :

Philip Edwardo      :

   v.        :    No. 2021-41-Appeal.
               (PC 19-9894)
Roman Catholic Bishop of   :
  Providence et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Robert Houllahan | : | |
| v. | : | No. 2021-32-Appeal. |
| Louis E. Gelineau et al. | : | (PC 20-2010) |

| | | |
|---|---|---|
| Peter Cummings | : | |
| v. | : | No. 2021-33-Appeal. |
| Louis E. Gelineau et al. | : | (PC 19-10530) |

| | | |
|---|---|---|
| Philip Edwardo | : | |
| v. | : | No. 2021-41-Appeal. |
| Roman Catholic Bishop of Providence et al. | : | (PC 19-9894) |

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.** This Court is confronted with another amendment of the General Laws, which, it is alleged, breathes new life into previously time-barred lawsuits against Bishop Louis E. Gelineau, Bishop Thomas

- 1 -

Tobin, the Roman Catholic Bishop of Providence, a Corporation Sole, and several additional corporate defendants.

These consolidated cases came before the Supreme Court on February 1, 2023, on appeal by plaintiffs, Robert Houllahan, Peter Cummings, and Philip Edwardo (Houllahan, Cummings, Edwardo, or collectively, plaintiffs) challenging the dismissal of all claims in favor of defendants, Louis E. Gelineau; the Roman Catholic Bishop of Providence, a Corporation Sole (RCB); Thomas Tobin; St. Joseph's Church Providence Rhode Island; Bishop McVinney Regional School, Alias, Successor to Catholic Association for Regional Education; St. Anthony Church Corporation North Providence; John/Jane Doe 1-250; and XYZ Corporations 1-250 (defendants) in accordance with Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

On appeal, plaintiffs allege that the trial court erred in ruling that G.L. 1956 § 9-1-51 (the act), as amended, created a class of criminal actors beyond the scope of actual perpetrators as set forth in the act. The plaintiffs also urge this Court to abrogate its prior holding in the leading case of *Kelly v. Marcantonio*, 678 A.2d 873 (R.I. 1996), and its progeny, that serves to bar recovery against those whose conduct, plaintiffs submit, rises to the level of criminality. The plaintiffs also contend that the trial court erred in overlooking a single claim by plaintiff Edwardo that is based

on New York law. For the reasons set forth in this opinion, we affirm the decision of the Superior Court in all respects.

## Facts and Travel

The plaintiffs in the cases at bar filed separate Superior Court actions alleging that they were sexually molested as minors by priests in the Roman Catholic Diocese of Providence (Diocese). We address each plaintiff's allegations in turn.[1]

Robert Houllahan was born in the late 1960s to a devout Roman Catholic family. He became acquainted with Normand Demers, offending priest, in his capacity as a diocesan priest at St. Joseph's Church. Demers engaged in a relationship with Houllahan, which included religious instruction and training, spiritual guidance, and socialization. The plaintiff alleges that, at some point in 1976, he was molested by Demers and another man in Demers's private quarters above the parish rectory. While in the rectory, Houllahan took note of several children from Central America, some of whom were living in the rectory at the time. For over twenty years, Houllahan was unable to speak of his abuse at the hands of Demers.

Houllahan asserted that in the late 1970s, church officials were aware that Demers was bringing boys to the United States from Central America for the purpose

---

[1] We pause to note that this Court concurs with the trial justice's observations that the accusations made by plaintiffs against each offending priest were hideous and appalling and shock the conscience of the Court.

of sexual molestation. Demers eventually was arrested in 1989, in Haiti, after the director of an orphanage, with which Demers and the hierarchal defendants in this case were associated, learned that he was molesting boys at the facility. The plaintiff alleges that Bishop Gelineau, through his Auxiliary Bishop, Kenneth Angell, promised the orphanage director that Demers would be investigated, prosecuted, and punished in Rhode Island if the director would cooperate in helping to have the charges against him dismissed. According to plaintiff, shortly after Demers's return to Rhode Island, these defendants returned him to service in a parish, describing the original reports as unsubstantiated.

Peter Cummings was born in 1966 to a Roman Catholic family who regularly received sacraments through parishes within the Diocese. As a practicing Roman Catholic, Cummings developed great admiration, trust, reverence, and obedience to Roman Catholic priests, including Reverend John Petrocelli. The plaintiff became acquainted with Petrocelli while a student at Bishop McVinney Regional Elementary School, which he attended from ages nine until thirteen. Petrocelli used his position with the school to initiate and maintain a relationship with Cummings, encouraging him to participate in different activities, including swimming at a local pool. It was after one of these swimming sessions that Petrocelli first sexually assaulted Cummings, taking him in his grasp and indicating that it was very important that he be allowed to show Cummings how to dry his genitals. Although Petrocelli released

Cummings when he said no and resisted, he proceeded to fondle himself under a towel while Cummings continued to dry himself. This behavior continued frequently while Cummings attended grade school.

Over a decade later, in 1992, Cummings was hospitalized after suffering a severe psychological episode. He finally was able to speak about the abuse that he suffered at the hands of Petrocelli when he was a child. Cummings contacted the Diocese to alert it of Petrocelli's abuse and was subsequently visited by Auxiliary Bishop Angell. Although Bishop Angell offered to assist Cummings with his treatment, Cummings alleged that Angell failed to acknowledge Petrocelli's history of misconduct, including a complaint recorded months earlier about Petrocelli swimming with young boys.

Philip Edwardo also was born to a devout Roman Catholic family in 1966. Commencing in either 1977 or 1978, Philip Magaldi, pastor of St. Anthony Church, initiated and maintained a relationship with Edwardo as his mentor and confidant through Edwardo's work as an altar boy. Edwardo was a student at St. Thomas Catholic Regional Elementary School, and Magaldi arranged to have Edwardo available to serve Mass at several funerals each month while he was in school.

In 1979 or 1980, Magaldi learned that Edwardo's mother had developed a serious drinking problem, and that Edwardo's home life was difficult. Magaldi encouraged Edwardo to spend his spare time at St. Anthony's rectory and church

while also assisting with different tasks around the church. As Edwardo grew close to the employees of the church, including Magaldi, he eventually was compensated for his work, and Magaldi informed Edwardo's father that Edwardo could stay at the rectory any time he wished.

On occasion, Edwardo slept at the rectory at Magaldi's urging, using a spare bedroom on the second floor. On one occasion in the spring of 1980, Magaldi took Edwardo to lunch in Warwick and then to a spa to use a swimming pool. When Edwardo complained that he did not feel well, Magaldi used this as an excuse to perform a "medical procedure" on Edwardo, but in actuality used the opportunity to sexually assault him. Edwardo did not resist until he became dizzy and vomited.

Later that summer, Magaldi began regularly supplying Edwardo with alcohol. During one incident, after several drinks, Magaldi contrived a medical problem and induced Edwardo to assist him, which again ended in sexual assault. Over the ensuing months, Magaldi became very physical with Edwardo, grabbing his buttocks and genitals whenever the chance arose. When Edwardo attempted to ask Magaldi to stop, Magaldi threatened to tell his father that he had been consuming alcohol. This threat, along with Magaldi's continued attention and gift giving, led to several years of Magaldi's abuse.

Edwardo estimates that he was sexually abused between 100 and 300 times from 1978, when he was twelve years old, until 1983, when he was seventeen years

old. Edwardo and Magaldi went on several out-of-state trips throughout this period, including a two-day trip to New Hampshire, and a trip to New York City, where he was supplied with alcohol by Magaldi and molested in his hotel room after he attempted to go to sleep for the night. During this later trip, Magaldi mentioned to Edwardo that Bishop Gelineau was informed about the trip because it was related to his priestly duties.

Edwardo also alleges that he was physically beaten by another priest, at the behest of Magaldi, for withdrawing from their interactions. Once Edwardo was finally able to tell Magaldi to cease his abuse, Magaldi contacted Edwardo's father and fabricated a story about Edwardo stealing money from the church. According to Edwardo, he chose to allow his father to believe Magaldi's allegations rather than disclose the abuse that had occurred.

Edwardo alleges that he was unable to speak of Magaldi's abuse until approximately 2007, when he contacted the Bishop's office to alert them of the abuse; Edwardo was then referred to Robert McCarthy[2] in the Diocese's Office of Compliance. According to Edwardo, he spoke with McCarthy several times and

---

[2] Robert McCarthy was the Diocese's first education and complaint coordinator for sexual concerns. He was tasked with investigating and recommending appropriate resolutions for complaints of sexual misconduct involving anyone associated with the Diocese. He is not a defendant in this case.

provided a detailed statement outlining the years of abuse that he suffered at the hands of Magaldi.[3]

Bishop Gelineau was the Roman Catholic Bishop of Providence from 1972 until 1997. In this role, Bishop Gelineau was vested with legislative, executive, and judicial power regarding the governance of the Diocese. Bishop Gelineau was responsible for the "training, hiring, assignment, monitoring, and/or supervision of diocesan candidates accepted for admission to the priesthood, seminarians, deacons and priests generally"—including the offending priests. The RCB is the primary corporate entity through which Bishop Gelineau and the Diocese conducted their business.

The plaintiffs alleged that the offenses committed by the offending priests were undertaken during the course and within the scope of their employment as priests incardinated in the Diocese, under the authority of Bishop Gelineau and RCB. The plaintiffs alleged these defendants knew that these priests were pedophiles and/or ephebophiles[4] who made sexual advances toward minor boys under the pretext of their priestly duties. Among their several allegations, plaintiffs contended

---

[3] During this time, Edwardo learned that Magaldi had been transferred to a Diocese in Texas, where he was accused of engaging in the same behavior with another child.

[4] Ephebophilia is defined as "[a] paraphilia in which adult sexual gratification is derived from fantasies or acts involving a postpubescent adolescent, often of the same gender." The American Heritage Dictionary of the English Language 597 (5th ed. 2011).

that defendants knew of, but failed to warn plaintiffs or their parents of, practices commonly used by child predators, including swimming trips and outings as an opportunity to abuse children, and that such practices were ongoing by these priests. The plaintiffs also alleged that defendants understood that the activities undertaken by the offending priests, including outreach to foreign orphaned boys and local young male prostitutes, were for illicit sexual activity, but, in order to protect the priests, declined to warn plaintiffs.

In their complaints, plaintiffs identified a bevy of other priests, incardinated in the Diocese, who admitted to childhood sexual assault offenses, were convicted of childhood sexual assault, or were under police investigation for childhood sexual assault; the misdeeds of these priests are not before us. The plaintiffs alleged that defendants ignored, concealed, and/or pretended to be unaware that priests were sexually abusing children in order to protect the reputation of the Roman Catholic Church rather than secure the safety and well-being of children. The plaintiffs alleged that defendants engaged in a pattern of conduct that included falsely assuring others that the issue of offending conduct would be addressed; ignoring or failing to properly investigate complaints; suppressing the results of investigations; reassigning offending priests to new parishes; falsely holding out offending priests as competent, moral, and harmless; falsely representing that they would actively assist in the criminal investigation and prosecution of priests accused of childhood

sexual abuse; and failing to warn parishioners. According to plaintiffs, this conduct not only protected the Bishop and the Diocese, it enabled and aided and abetted the offending priests to further offend.

Motions to dismiss were filed in each case contending that all claims were barred by the applicable statute of limitations set forth in G.L. 1956 § 9-1-14(b) that was in effect when the abuse occurred. In accordance with § 9-1-14(b), actions for personal injury arising from the claims asserted were subject to a three-year statute of limitations. Specifically, defendants asserted that because they were not perpetrators under the amended statute, § 9-1-51, which provides for a thirty-five-year retroactive statute of limitations for actual perpetrators, these causes of actions were time-barred pursuant to § 9-1-14(b).

A joint hearing on the motions to dismiss was held on September 30, 2020. Significantly, upon inquiry by the trial justice, counsel for plaintiffs acknowledged that plaintiffs were opposing the motions to dismiss based solely on the interpretation of the term "perpetrator" set forth in § 9-1-51. Counsel for plaintiffs also acknowledged that plaintiffs discovered their causes of action more than three years before these actions were commenced.

The defendants argued that the thirty-five-year retroactive statute of limitations set forth in § 9-1-51(a)(1), and enacted by the General Assembly in 2019, applied only to individuals accused of actually engaging in sexual abuse, referred to

as perpetrators in the act. The defendants contended that, pursuant to § 9-1-51(a)(2), a non-perpetrator is one who may have caused or contributed to the wrongful sexual activity by another person. The defendants averred that plaintiffs' complaints must be dismissed because defendants are non-perpetrators, and the retroactive application of the thirty-five-year statute of limitations in the 2019 amendment to § 9-1-51 is applicable only to perpetrator defendants.

The plaintiffs relied heavily on this Court's decision in *Kelly*, in which we recognized that one who aided and assisted the childhood sexual abuse "*to the degree that he or she would be subject to prosecution under chapter 37 of title 11*[,]" would be considered a perpetrator defendant. *Kelly*, 678 A.2d at 876 (emphasis added). The plaintiffs contended that although some concealment or aiding and abetting claims may amount to negligence and not perpetrator conduct under *Kelly*, the defendants' actions could nonetheless rise to the level of criminal aiding and abetting, and thus constitute perpetrator conduct. Hence, according to plaintiffs, because defendants' actions rose to the level of criminality, they were perpetrators under § 9-1-51 and subject to the retroactive application of the thirty-five-year statute of limitations.

The trial justice issued a written decision on October 16, 2020, granting defendants' motions to dismiss all claims in all cases. The trial justice declared that § 9-1-51 "unambiguously distinguishes between 'perpetrator' and 'non-perpetrator[,]' [and a]ll wrongful conduct committed by a defendant which

- 11 -

caused or contributed to childhood sexual abuse by another person is 'non-perpetrator' conduct regardless of whether the conduct would subject the defendant to criminal prosecution under the Rhode Island penal code."  The trial justice further determined that, even if the statute was ambiguous, it was clear that the General Assembly intended to limit the term perpetrator to the actual abuser.

The trial justice concluded that the only conduct that met the definition of perpetrator was conduct by the actual abuser, which in the cases before her, were the offending priests.  Because defendants were non-perpetrators, the thirty-five-year statute of limitations was not applicable, and the actions were dismissed as time-barred.  Orders of dismissal, pursuant to Rule 12(b)(6), were entered in each case.  The plaintiffs timely appealed.

**Standard of Review**

"The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Benson v. McKee*, 273 A.3d 121, 127 (R.I. 2022) (quoting *Gannon v. City of Pawtucket*, 200 A.3d 1074, 1077 (R.I. 2019)).  "When we review the grant of a motion to dismiss pursuant to Rule 12(b)(6), we apply the same standard as the hearing justice." *Id.* (quoting *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017)).  "A motion to dismiss may be granted only when it is established beyond a reasonable doubt that a party would not be entitled to relief from the defendant under any set of conceivable facts that could be proven in support

- 12 -

of its claim." *Id.* (quoting *Chase*, 160 A.3d at 973). This Court "ha[s] permitted a statute-of-limitations defense to be raised by a motion to dismiss under Rule 12(b)(6) —providing the alleged timing defect appears on the face of the complaint." *Martin v. Howard*, 784 A.2d 291, 297 (R.I. 2001).

"Under this standard, this Court confines its review to the four corners of the complaint, assume[s] that the allegations set forth are true, and resolve[s] any doubts in favor of the [complainant]." *Benson*, 273 A.3d at 127 (internal quotation marks omitted). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Chase*, 160 A.3d at 973).

## Analysis

### Statutory Construction

The plaintiffs contend that the trial justice erred in dismissing their complaints as time-barred after determining that defendants fell within the classification of non-perpetrator, even if their conduct, as plaintiffs contend, would be subject to criminal prosecution. "This Court reviews 'questions of statutory interpretation *de novo.*'" *Epic Enterprises LLC v. Bard Group, LLC*, 186 A.3d 587, 589 (R.I. 2018) (quoting *State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended

- 13 -

by the Legislature." *Id.* at 589-90 (quoting *Webster v. Perotta*, 774 A.2d 68, 75 (R.I. 2001)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* at 590 (quoting *Alessi v. Bowen Court Condominium*, 44 A.3d 736, 740 (R.I. 2012)). When determining the intent of the Legislature, "we consider the entire statute as a whole * * *." *Sorenson v. Colibri Corp.*, 650 A.2d 125, 128 (R.I. 1994).

In accordance with § 9-1-51(a)(1)(i) and (ii), all claims against a perpetrator defendant for injuries suffered as a result of sexual abuse must be brought within thirty-five years of the alleged act, or within seven years from the time the victim discovered, or reasonably should have discovered, that the injury was caused by the act. *See* § 9-1-51(a)(1). The 2019 amendment allowed a new thirty-five-year statute of limitations for claims pertaining to a perpetrator defendant to be applied retroactively, that is, "any claim or cause of action based on *conduct of sexual abuse* may be commenced within the time period enumerated in subsections (a)(1)(i) and (a)(1)(ii) regardless if the claim was time-barred under previous version of the general laws." Section 9-1-51(a)(3), as amended by P.L. 2019, ch. 82, § 1; P.L. 2019, ch. 83, § 1 (emphasis added).

Conversely, claims against non-perpetrator defendants that were time-barred under previous versions of the General Laws were not revived under the 2019 amendment to § 9-1-51. The relevant language is as follows:

> "(2) All claims or causes of action brought against *a non-perpetrator defendant* by any person alleging negligent supervision of a person that sexually abused a minor, or that the non-perpetrator defendant's conduct caused or contributed to the childhood sexual abuse *by another person* to include, but not be limited to, wrongful conduct, neglect or default in supervision, hiring, employment, training, monitoring, or failure to report and/or the concealment of sexual abuse of a child shall be commenced within the later to expire of:
>
> > "(i) Thirty-five (35) years of the act or acts alleged to have caused an injury or condition to the minor; or
> >
> > "(ii) Seven (7) years from the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act." Section 9-1-51(a)(2), as amended by P.L. 2019, ch. 82, § 1; P.L. 2019, ch. 83, § 1 (emphasis added).

As defined by the statute, the term sexual abuse is limited to "any act *committed by the defendant* against a complainant who was less than eighteen (18) years of age at the time of the act and which act would have been a criminal violation of chapter 37 of title 11." Section 9-1-51(e) (emphasis added).

According to plaintiffs, because neither § 9-1-51(a)(1) or (2) provides an explicit definition of a perpetrator or a non-perpetrator defendant, the language of the statute must be viewed as ambiguous. Specifically, plaintiffs assert that the use

- 15 -

of the language "all claims" in both sections means that any tort claim could be asserted against both a perpetrator and non-perpetrator defendant, except for failure to report or professional negligence, thus rendering the distinction between the two classes meaningless. The plaintiffs allege that the trial justice erred in dismissing their complaints by unambiguously categorizing defendants as non-perpetrator defendants, even though, plaintiffs contend, they could be found criminally responsible for the sexual abuse committed by the offending priests. The plaintiffs further argue that defendants are criminally responsible as perpetrators of the crimes committed against plaintiffs, based on their own conduct. We disagree. Although this Court recognizes and appreciates the pain and horror suffered by these plaintiffs as innocent children, when the General Assembly amended § 9-1-51, the members deliberately drew a clear dichotomy between perpetrator and non-perpetrator defendants for retroactive application of the statute of limitations; its legislative history gives rise to this conclusion.

It is well settled that when this Court examines the meaning of a statute, "individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Sorenson*, 650 A.2d at 128. Although § 9-1-51 does not define perpetrator, the statute sets forth a nonexhaustive list of conduct pertaining to non-perpetrator defendants, which comprise the very allegations made against these defendants. Non-perpetrator

- 16 -

defendants are defendants accused of "negligent supervision of a person that sexually abused a minor, or * * * [whose] conduct caused or contributed to the childhood sexual abuse by *another person* * * *." Section 9-1-51(a)(2) (emphasis added). These acts include, but are not limited to, "wrongful conduct, neglect or default in supervision, hiring, employment, training, monitoring, or failure to report and/or the concealment of sexual abuse of a child * * *." *Id.*

This Court has previously addressed the distinction between perpetrator and non-perpetrator defendants regarding claims for childhood sexual abuse, most notably in *Kelly v. Marcantonio*, 678 A.2d 873 (R.I. 1996). In *Kelly*, we were confronted with the question of "whether claims for injuries resulting from the sexual abuse of a minor [were] governed by G.L.1956 § 9-1-51, as amended by P.L.1993, ch. 274, § 1 or G.L.1956 § 9-1-14(b) when those claims [were] asserted against someone other than the alleged abuser." *Kelly*, 678 A.2d at 875. Our decision in *Kelly* rested on the definition of sexual abuse, which has remained unchanged. *Id.* at 876. Childhood sexual abuse is conduct that falls within the provisions of chapter 37 of title 11 of the General Laws, entitled "Sexual Assault."

In *Kelly*, this Court stated that when "read[ing] the definition [of sexual abuse] contained in § 9-1-51(e) together with the main body of that statute, the rule that emerges is that all actions brought pursuant to § 9-1-51 must be based on the intentional conduct of '*the*' defendant-perpetrator." *Kelly*, 678 A.2d at 876.

We acknowledged that "[a]lthough [§ 9-1-51] did not explicitly limit the statute's application only to perpetrator-defendants, the language used by the General Assembly permits no other interpretation." *Kelly*, 678 A.2d at 876. Thus, perpetrators are limited to those accused of committing child sexual abuse. *See id.* Significantly, in *Kelly*, this Court unequivocally declared that "the *only* intended target of the legislation is the person who at the time of the abuse would have been subject to criminal prosecution pursuant to chapter 37 of title 11 of our General Laws." *Id.* at 876 (emphasis added). That remains the law today.

In *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174 (R.I. 2008), the plaintiffs' complaint against many of these same defendants, which included charges of criminal conduct, alleged, in part, concealing a felony; conspiracy; aiding and abetting; intentional harm and misconduct; fraudulent concealment; and intentional infliction of emotional distress. *Ryan*, 941 A.2d at 178 n.8.[5] Those claims failed. *Id.* at 188. The alleged conduct of the hierarchal defendants did not classify them as perpetrator defendants. *Id.* at 178.

Simply put, under § 9-1-51(a)(2), a non-perpetrator defendant is one who did not engage in childhood sexual abuse as a principal or an aider and abettor, but one whose wrongful conduct "caused or contributed to the childhood sexual abuse by *another person* * * *." Section 9-1-51(a)(2) (emphasis added). In the cases at bar,

---

[5] Many of these same claims are asserted by plaintiffs in the cases at bar.

plaintiffs do not suggest that defendants engaged in the sexual abuse perpetrated by the offending priests.[6] The allegations made against these defendants, as in *Kelly* and its progeny, are appalling, but the claims asserted fall squarely within non-perpetrator conduct; there are no allegations of actual childhood sexual abuse against these defendants, or of conduct that "actually aids and assists in the commission of the criminal act to the degree that he or she would be subject to prosecution under chapter 37 of title 11 as a principal." *Kelly*, 678 A.2d at 876. We therefore conclude that the trial justice properly found defendants to be non-perpetrator defendants as designated by § 9-1-51.

Although plaintiffs argue that defendants can be classified as perpetrators and rely on *Kelly* as support for this novel assertion, we reject these contentions. According to plaintiffs, defendants could be found to have criminal liability for an

---

[6] When drafting their complaints, plaintiffs mounted an "everything but the kitchen sink" pleadings approach, including more than thirty cumulative counts, spanning over four hundred pages of pleadings. The claims included allegations of (1) intentional misconduct (deliberately reassigning the offending priests, failing to remove or suspend, or otherwise stop them from pursuing sexual assaults on children); (2) intentional misconduct (breaching their duty of care and disregarding the rights and safety of plaintiffs by failing to warn or protect them from the offending priests under their supervision); (3) negligence in the hiring, supervision, and retention of the offending priests; (4) *respondeat superior*; (5) negligence for premises liability; (6) conspiracy to commit acts and violate plaintiffs' rights; (7) fraudulent concealment/misrepresentation; (8) breach of fiduciary duty; (9) negligent infliction of emotional distress; (10) breach of duty *in loco parentis*; and (11) invasion of privacy.

offense, whether or not they were physically present when the crime was committed, as either a coconspirator or an "accessory" to the offense. This simply is not the law.

The plaintiffs seize on the language in *Kelly* that states that an employer can be considered a perpetrator if they "actually aid[] and assist[] in the commission of the criminal act to the degree that he or she would be subject to prosecution under chapter 37 of title 11 as a principal," *Kelly*, 678 A.2d at 876, and argue that defendants should be classified as perpetrators for "aiding and abetting" the offending priests. The plaintiffs are incorrect. To be subject to prosecution under chapter 37 of title 11, an offender must have actually committed the crime or be guilty as an aider and abettor.

> "Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title." General Laws 1956 § 11-1-3.

To find that a party aided and abetted a principal, "the circumstances must establish that a defendant 'shared in the criminal intent of the principal and there must be a community of unlawful purpose *at the time the act is committed * * ** [and] assumes *some participation in the criminal act* in furtherance of the common design * * *.'" *State v. Gazerro*, 420 A.2d 816, 828 (R.I. 1980) (emphasis added) (quoting *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir. 1952)).

In order for defendants to be found to be aiders and abettors, the evidence must establish that defendants knowingly, willfully, and intentionally sought, *through their conduct*, to accomplish the sexual abuse of these children by these priests. *See United States v. O'Campo*, 973 F.2d 1015, 1022 (1st Cir. 1992) (defendant's criminal liability for aiding and abetting was affirmed because he "knowingly, willfully, and intentionally" assumed his role "to insure that the distributive transaction of cocaine for money was fully consummated"). Assuming the facts as alleged as true, there is nothing in the record before us that would lead us to reach this conclusion. None of plaintiffs' numerous allegations accuse defendants of participating in the sexual abuse of these victims, nor assisting these priests in accomplishing their goal of sexually molesting plaintiffs. It is clear that the motivation of these defendants, although deplorable in its own right, was for purely selfish, self-preservation purposes. We therefore conclude that defendants cannot be found culpable as aiders and abettors.[7]

## Other Criminal Allegations

We turn briefly to plaintiffs' remaining arguments. The plaintiffs contend that one could negligently fail to report child abuse, which could have the unintended

---

[7] We pause to note that included in the allegations by plaintiff Edwardo was that he was physically beaten by another priest for withdrawing from his interactions with Magaldi. This other priest would certainly qualify as an aider and abettor as he sought to assist Magaldi in achieving his goal of his continued sexual assault of Edwardo.

- 21 -

effect of concealing it, but would not rise to the level of perpetrator, while, conversely, one could undertake affirmative intentional conduct that could categorize them as a perpetrator. We deem this argument unavailing. Section 9-1-51(a)(2) dictates that the acts that defendants are accused of committing is non-perpetrator conduct. As set forth in § 9-1-51(a)(2), wrongful conduct including supervision, monitoring, concealment, and failure to report child sexual abuse is non-perpetrator conduct, even though it may violate Rhode Island's penal code. The General Assembly, with full knowledge that failure to report child sexual abuse is a criminal act under the General Laws, designated this conduct as non-perpetrator. Therefore, even if defendants' actions constituted a violation of a criminal statute, these defendants are non-perpetrators and the claims are time-barred.

## Legislative History

This Court rejects plaintiffs' contention that § 9-1-51 is ambiguous. And indeed, were we to find ambiguity in § 9-1-51, its legislative history would prove fatal to plaintiffs' argument. When interpreting a statute, "we apply the meaning most consistent with the intended policies and purposes of the Legislature" when the meaning is unclear. *Roe v. Gelineau*, 794 A.2d 476, 484 (R.I. 2002). On January 23, 2019, House Bill No. 5171, the amendment to § 9-1-51 under review, was introduced

in the General Assembly.[8] This act, as originally drafted, would have extended the statute of limitations for victims of childhood sexual abuse from seven years to thirty-five years, while also extending the statute of limitations for conduct which caused or contributed to childhood sexual abuse by others to thirty-five years. It would have allowed claims against perpetrator and non-perpetrator defendants that were previously time-barred to be brought within three years of the effective date of the legislation. This proposed version of the statue was amended, and the provision allowing for previously time-barred claims to be brought forward against non-perpetrator defendants was removed.

The statute that is currently before us, enacted by the General Assembly, and signed by the governor, markedly differs from the version first introduced. Specifically, the amendment drew a clear distinction for claims against hierarchy defendants as prospective only, which is the heart of this controversy. The act as passed was limited to perpetrator defendants and allows for claims against perpetrators within the newly extended statutes of limitations, regardless of whether the claim had previously been time-barred. *See* § 9-1-51(a)(3). But the Legislature did not allow complaints against non-perpetrator defendants to be resurrected. The evolution of this legislation, from introduction to passage, convinces us that the

---

[8] An identical companion bill, Senate Bill No. 315, was introduced in the General Assembly on February 13, 2019.

General Assembly deliberately and purposefully intended the revival of time-barred claims against perpetrator defendants only. This is the law as it exists today.

**The Discovery Rule**

The plaintiffs next contend that this Court should abandon its holding in *Kelly* and allow claims to go forward in cases in which defendants' actions rise to the level of criminality, even if they are time-barred. The plaintiffs argue that "this Court should abandon that portion of *Kelly* * * * that is construed to carve out a *per se* rule prohibiting delayed discovery, a fact-based claim, from proceeding in child sexual abuse cases." (Emphasis omitted.) The plaintiffs urge this Court to adopt a discovery rule similar to our holding in *Anthony v. Abbott Laboratories*, 490 A.2d 43 (R.I. 1985), where we held that in actions involving drug-product liability, "the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." *Anthony*, 490 A.2d at 46.

In weighing this Court's holding in *Anthony* against claims of childhood sexual abuse in *Kelly,* we acknowledged that while "enforcement of claims against *perpetrator-defendants* could be justified because those defendants would be the persons directly responsible for any alleged repressed memories, neither that policy reason, nor any other policy concerns, are strong enough to support judicial application of the discovery rule to actions against nonperpetrator-defendants."

*Kelly*, 678 A.2d at 878. Our holding in *Kelly* has been reinforced by the recent legislative history underlying the current version of § 9-1-51. It would be most inappropriate for this Court to accomplish by judicial decree that which the General Assembly refused to enact by statute. We therefore decline plaintiffs' appeal to abandon "this well-settled precedent." *Brochu v. Santis*, 939 A.2d 449, 454 (R.I. 2008).

## Equitable Estoppel

The plaintiffs next argue that the doctrine of equitable estoppel requires that claims against defendants be allowed to proceed by virtue of defendants' intentional misconduct. "A defendant may be estopped from pleading the statute of limitations on the ground that representations were made for the purpose of inducing the plaintiff to rely thereon when the plaintiff did in fact so rely on the representations to his [or her] injury." *Wolf v. S. H. Wintman Co.*, 92 R.I. 470, 473, 169 A.2d 903, 905 (1961). "Pursuant to the provisions of § 9-1-20, if a potential defendant fraudulently conceals a cause of action from a potential plaintiff, the statute of limitations is tolled until such time as the plaintiff discovers the existence of a cause of action." *Ryan*, 941 A.2d at 182. "In order to demonstrate that there has been fraudulent concealment on the part of a defendant, a plaintiff must show: (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of plaintiff's

causes of action." *Id.* (citing *Kelly v. Marcantonio*, 187 F.3d 192, 200 (1st Cir. 1999)) (applying Rhode Island law). We have previously addressed this assertion.

In *Ryan*, we held that "the plaintiff must demonstrate that the defendant made an 'express representation or [engaged in] other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him [or her] to rely thereon to his [or her] disadvantage.'" *Ryan*, 941 A.2d at 182-83 (quoting *Caianiello v. Shatkin*, 78 R.I. 471, 476-77, 82 A.2d 826, 829 (1951)). "Mere silence or inaction on the part of the defendant does not constitute actual misrepresentation in this context." *Id.* at 182. "The key consideration is whether or not the defendant fraudulently misrepresented material facts, thereby misleading the plaintiff into believing that no cause of action existed." *Id.* at 183.

The plaintiffs in this case assert numerous accusations against defendants, but there are no claims of actual misrepresentations of facts; nor were plaintiffs convinced to believe that sexual assault did not occur; or that the offending priests were not the persons who committed the sexual assault. Additionally, the complaints fail to establish that these defendants made actual misrepresentations to plaintiffs regarding potential civil claims. The plaintiffs have acknowledged that they were aware of the sexual abuse perpetrated upon them by the offending priests decades ago. We therefore conclude that the statute of limitations is not tolled under

theories of equitable estoppel or fraudulent concealment but is counted among the sins of silence committed by these defendants.

## New York Claim

The plaintiffs allege that the trial justice erred in not addressing Edwardo's claim that defendants' actions resulted in his sexual abuse by the offending priest in the state of New York, in violation of that state's laws.[9] This Court has stated that a party waives its alleged error of law if it "fail[s] to raise and develop it in its briefs," even if the issue was properly preserved in the trial court. *McGarry v. Pielech*, 108 A.3d 998, 1005 (R.I. 2015).

In their initial brief before this Court, plaintiffs declared, in a single sentence, that the trial justice erred by not addressing the merits of the New York claim when granting the motions to dismiss. The plaintiffs again asserted this contention in their reply brief, arguing that the issues were properly preserved and should be remanded to the Superior Court with instruction to address them on the merits as they were not previously addressed by the trial court.

In Count XII of his amended complaint, Edwardo alleged that defendants' intentional or negligent acts or omissions resulted in a violation of the New York Child Victim's Act. However, in Superior Court, plaintiffs' objection to defendants'

---

[9] New York C.P.L.R. § 214-g, which went into effect on February 14, 2019, revived previously time-barred claims of sexual abuse by persons who were under eighteen.

motions to dismiss consisted of a one-sentence footnote, and plaintiffs'

memorandum merely asserted that there was no question that liability as to

non-perpetrators has been revived under New York law.

"Generally, we deem an issue waived 'when a party [s]imply stat[es] an issue

for appellate review, without a meaningful discussion thereof * * *.'" *A. Salvati

Masonry Inc. v. Andreozzi*, 151 A.3d 745, 750 (R.I. 2017) (quoting *In re Jake G.*,

126 A.3d 450, 458 (R.I. 2015)).   In the cases at bar, plaintiffs provided scant

argument in their briefs as to why the New York claim should survive a motion to

dismiss.

Furthermore, at the hearing on the motions to dismiss, the trial justice inquired

whether plaintiffs were only proceeding on the interpretation of the word perpetrator

in the amended statute.  The plaintiffs' counsel affirmatively answered that the issue

before the court was the interpretation of the word perpetrator in the amended statute.

The plaintiffs' counsel did not raise the issue of the New York claim at any point

during the hearing or at any time thereinafter.

This Court "ha[s] cautioned that a general objection is not sufficient to

preserve an issue for appellate review; rather, assignments of error must be set forth

with sufficient particularity to call the trial justice's attention to the basis of the

objection." *Union Station Associates v. Rossi*, 862 A.2d 185, 192 (R.I. 2004). The

failure of a specific objection, coupled with a failure to raise an issue during hearings

will render an issue waived, unless the case "falls within the narrow exception to the 'raise or waive rule' * * *." *Id*. Three factors must be satisfied in order for the exception to apply:

> "First, the error complained of must consist of more than harmless error. Second, the record must be sufficient to permit a determination of the issue. * * * Third, counsel's failure to raise the issue at trial must be due to the fact that the issue is based upon a novel rule of law which counsel could not reasonably have known at the time of trial." *Shoucair v. Brown University*, 917 A.2d 418, 428 (R.I. 2007) (quoting *Harvey Realty v. Killingly Manor Condominium Association*, 787 A.2d 465, 467 (R.I. 2001)).

In the cases at bar, plaintiffs failed to meaningfully develop their contention that the New York claim should survive the motion and failed to address the issue at the hearing or by way of postjudgment motions. The plaintiffs are asking the Court to find error in a matter not fairly brought to the attention of the trial justice. There is nothing in the record before us that would provide plaintiffs with an exception to our long held "raise or waive rule." We therefore conclude that that issue was not properly preserved for review by this Court and decline to address it here.

## Constitutional Claims

The trial justice declined to address defendants' contention that § 9-1-51(a)(3) violates article 1, section 2 of the Rhode Island Constitution for deprivation of due-process protections because she found that the statute unambiguously distinguished between perpetrator and non-perpetrator, and that plaintiffs' claims

- 29 -

were not revived. The defendants ask us to opine nonetheless on issues of constitutional significance.

We have long held that "[n]either this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so." *In re Brown*, 903 A.2d 147, 151 (R.I. 2006). "When * * * fac[ing] a fork in the road, with one turn that will require [this Court] to slog through the thicket of a constitutional issue and the other offering a journey through more hospitable terrain, we routinely elect to take the path of least resistance." *State v. Beaudoin*, 137 A.3d 717, 726 (R.I. 2016).

In the cases at bar, because the trial justice granted the motions to dismiss the plaintiffs' claims as time-barred, it was unnecessary to address the constitutional issues raised by the defendants. "[T]his Court 'will not decide a constitutional question raised on the record when it is clear that the case before it can be decided' on other grounds such that the determination of the constitutional question is not 'indispensably necessary for the disposition of the case.'" *Amico's Incorporated v. Mattos*, 789 A.2d 899, 909 (R.I. 2002) (quoting *State v. Pascale*, 86 R.I. 182, 185, 134 A.2d 149, 151 (1957)). We therefore decline to address the defendants' contention that the revival of these claims against the defendants is prohibited by the Rhode Island Constitution.

**Conclusion**

For the reasons set forth in this opinion, we affirm the decision of the Superior Court. The papers in this case may be returned to the Superior Court.


Justice Lynch Prata did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Robert Houllahan v. Louis E. Gelineau et al. |
| | Peter Cummings v. Louis E. Gelineau et al. |
| | Philip Edwardo v. Roman Catholic Bishop of Providence et al. |
| **Case Number** | No. 2021-32-Appeal. (PC 20-2010) |
| | No. 2021-33-Appeal. (PC 19-10530) |
| | No. 2021-41-Appeal. (PC 19-9894) |
| **Date Opinion Filed** | June 30, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiffs: |
| | Timothy J. Conlon, Esq. |
| | For Defendants: |
| | Howard Merten, Esq. |